CHARLES CARREON, ESQ. (127139)
2165 S. Avenida Planeta
Tucson, Arizona 85710
Tel: 520-841-0835
Fax: 520-843-2083
Email: chas@charlescarreon.com

Attorney Pro Se for Plaintiff Charles Carreon

E-filing

FILED

JUN 1 5 2012

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

CV 12 3112 DMR

| | |
|---|---|
| CHARLES CARREON | Case No.: |
| Plaintiff, | COMPLAINT FOR INJUNCTIVE TO IMPOSE CHARITABLE TRUST AND REQUIRE ACCOUNTING. AND FOR DAMAGES FOR TRADEMARK INFRINGEMENT AND INCITEMENT TO CYBERVANDALISM BY WEBSITE HACKING AND FALSE PERSONATION |
| vs. | |
| MATTHEW INMAN, INDIEGOGO, INC., NATIONAL WILDLIFE FEDERATION, AND AMERICAN CANCER SOCIETY, and Does 1 – 100, | |
| | |
| Defendants. | JURY DEMAND |

FILED BY FAX

For its complaint against defendants Matthew Inman ("Inman") and Indiegogo, Inc. ("Indiegogo"), jointly referred to sometimes herein as the "Fundraising Defendants," and the National Wildlife Federation ("NWF") and the American Cancer Society ("ACS"), jointly referred to sometimes herein as the "Charitable Organization Defendants"), and Does 1 – 100, plaintiff Charles Carreon ("Plaintiff"), alleges:

**JURISDICTION**

1. This is an action for infringement of a federally registered trademark pursuant to 15 USC §1114, unfair competition under California Business & Professions Code § 17200, *et. seq.*, and violations of the Supervision of Trustees and Fundraisers for Charitable Purposes Act as amended by the Nonprofit Integrity Act California Government Code §§ 12580, *et seq.* and the Charitable Solicitation Disclosure Law, California Business & Professions Code §§ 17510, *et seq.*

2.     This Court has jurisdiction over this action pursuant to: 28 USC §§ 1331 and 1338(a) and

(b), and 15 USC §1121, as an action for violations of the Lanham Act, 15 USC §§ 1051, *et seq.*,

28 USC § 1332(a)(1), and has pendent, supplemental and ancillary jurisdiction pursuant to 28

U.S.C. § 1367 of state law claims arising from a common nucleus of operative fact joined with a

substantial and related claim under the trademark laws of the United States, 15 USC §§ 1051, *et*

*seq.* Further, this Court has diversity jurisdiction as the amount in controversy exceeds $75,000

and the plaintiffs and defendants are diverse.  Further, this Court has jurisdiction under the

United States Declaratory Judgment Act, 28 USC §§2201 and 2202.

3.     Venue is proper under 28 USC § 1391(b)(2) because a substantial part of the events or

omissions giving rise to the claim occurred at the premises of Indiegogo, and all of the property

that is the subject of the action is situated within the Northern District of California at 301 8th

Street, San Francisco, California 94117.

## INTRADISTRICT ASSIGNMENT

4.     Pursuant to L.R. 3-2(c), intradistrict assignment of this Intellectual Property Action is made

on a District-wide basis.

## PARTIES

5.     Plaintiff is an individual residing in Tucson, Arizona, and a member of the California State

Bar Association with an Internet website at www.charlescarreon.com and a Twitter account at

@charlescarreon.  Defendant Inman is an individual residing in the State of Washington who

runs a comic website at www.TheOatmeal.com and various related enterprises.  Defendant

Indiegogo is a corporation incorporated in the State of Delaware, registered to do business in the

State of California pursuant to Cal. Corp. Code § 2105 as Entity No. C3054414 in the State of

California, doing business in the State of California.

6. This Court has general personal jurisdiction over Indiegogo, that markets itself as "the world's funding platform," based on its corporate presence in California, its operation of the transactional Internet website at www.indiegogo.com (the "Indiegogo Site") in California, and its pervasive business activity in California. This Court has general jurisdiction over Inman due to his pervasive marketing of Internet digital products through various websites, including but not limited to www.theoatmeal.com ("Inman's Sites") that are purposefully directed to California consumers, and earn many thousands of dollars in transactions with California residents. The Court has specific personal jurisdiction over Inman, because in order to accumulate the property that is the subject of this action, Inman contracted with Indiegogo as further alleged *infra*, and specifically directed an Internet fund-raising campaign linked to the California-based Indiegogo Site at http://www.indiegogo.com/bearlovegood (the "Bear Love" campaign) toward California consumers, and to Internet users nationwide, through the communicational instrumentalities of interstate commerce within this judicial District. The Charitable Organization defendants are Wherefore all of the named defendants, and each of them, have purposely availed themselves of the laws of the State of California operative within this judicial District.

7. The contract entered into between Inman and Indiegogo is a clickwrap online agreement, the full text of which appears online at http://www.indiegogo.com/about/terms (the "Indiegogo Contract"). Pursuant to the Indiegogo Contract, Inman agreed to indemnify Indiegogo for any breaches of the Indiegogo Contract, agreed that Indiegogo's services are solely based in California, and agreed that any claim or dispute arising out of the Indiegogo Contract would be decided under California law and in California.

8. The full extent of the facts linking the fictitiously named defendants Does 1 through 5 with the matters alleged herein, and/or the true names or capacities, whether individual, corporate,

partnership, associate, member or otherwise of said fictitiously named defendants, are unknown to Plaintiff, who therefore sues said defendants by such fictitious names. Plaintiff is informed and believes and thereon alleges that each of the defendants designated herein as Doe 1 through 5 negligently, wantonly, recklessly, tortiously and unlawfully committed the acts that proximately caused injury and damages to Plaintiff as alleged herein. Plaintiff will hereafter seek leave of court to amend this complaint to allege said defendants' true names and capacities when the same have been ascertained.

9. Plaintiff alleges, on information and belief, that each defendant named herein including those named as Does, is and at all relevant times mentioned was, the agent, servant, co-conspirator, advertiser, and/or employee of each of the other Defendants and, in doing the things alleged herein, was acting in the course and scope and with the knowledge of each of the other named Defendants. Plaintiff further alleges on information and belief that each Defendant named herein aided and abetted the others by authorizing and/or ratifying the acts herein alleged.

## CALIFORNIA LAW GOVERNING CHARITABLE CONTRIBUTIONS

10. In 1959, California enacted the "Supervision of Trustees and Fundraisers for Charitable Purposes Act." Calif. Government Code Sections 12580 *et seq.*, (the "Act"), modified by the Nonprofit Integrity Act of 2004 (the "NIA"). In 1972, the California legislature decided the best protection against solicitation fraud was to require substantial, comprehensive registration and disclosure procedures. To promote public education about charitable solicitation costs through disclosure to the donor, California passed the "Charitable Solicitation Disclosure Law." Calif. Business & Professions Code Sections 17510 *et seq.* (the "CSDL").

11. The Act requires all charitable organizations to "establish and exercise control" over their own fundraising activities, and over all fundraising activities conducted by others for their

benefit.  Charitable organizations operating in California must approve all written contracts for fundraising on their behalf.  Cal. Govt. Code § 12599.6(b).

12.   Cal. Govt. Code § 12599(a) defines commercial fundraisers:

> "Commercial fundraiser for charitable purposes" means any individual, corporation, unincorporated association, or other legal entity who for compensation does any of the following:
>
>  (1) Solicits funds, assets, or property in this state for charitable purposes.
>  (2) As a result of a solicitation of funds, assets, or property in this state for charitable purposes, receives or controls the funds, assets, or property solicited for charitable purposes.
>  (3) Employs, procures, or engages any compensated person to solicit, receive, or control funds, assets, or property for charitable purposes."

13.   Subsection (b) of Section 12599 provides in relevant part:  *"A commercial fundraiser for charitable purposes shall, prior to soliciting any funds, assets, or property … in California for charitable purposes, or prior to receiving and controlling any funds, assets, or property, including salvageable personal property, as a result of a solicitation in this state for charitable purposes, register with the Attorney General's Registry of Charitable Trusts on a registration form provided by the Attorney General."*  Subsection (c) requires commercial fundraisers to file yearly accountings pursuant to subsection (d) that disclose (1) total yearly revenue, (2) the fee or commissions charged, (3) salaries paid to their officers and employees, (4) fundraising expenses, (5) distributions to the identified charitable organization or purpose, and (6) the names and addresses of any director, officer, or employee of the commercial fundraiser for charitable purposes who is a director, officer, or employee of any charitable organization listed in the annual financial report.

14.   Section 12599(f) provides in relevant part:

> *"Failure to comply with these registration or annual renewal and financial reporting requirements shall be grounds for injunction*

against solicitation in this state for charitable purposes *and other civil remedies provided by law.*" (Emphasis added.)

15.   Section 12599(m) provides:

> "A commercial fundraiser for charitable purposes shall not solicit in the state on behalf of a charitable organization unless that charitable organization is registered or is exempt from registration with the Attorney General's Registry of Charitable Trusts."

16.   Section 12599(f) specifically prohibits charitable fundraisers from conducting solicitation campaigns in violation of the Act, committing unfair and deceptive acts, engaging in fraudulent conduct, using any name that implies a contribution is for a particular charitable organization, falsely telling donors that a contribution is for a charitable organization or will be used for a charitable purpose, or misrepresenting a person as having has endorsements that they do not have.

17.   Pursuant to Section 12599(h), *"[n]ot less than ten (10) days prior to  the initiation of a solicitation campaign … a commercial fundraiser for charitable purposes shall file with the Attorney General's Registry of Charitable Trusts a notice"* on a prescribed form, setting forth the following:

> "(1) The name, address, and telephone number of the commercial fundraiser for charitable purposes.
> (2) The name, address, and telephone number of the charitable organization with whom the commercial fundraiser has contracted.
> (3) The fundraising methods to be used.
> (4) The projected dates when performance under the contract will commence and terminate.
> (5) The name, address, and telephone number of the person responsible for directing and supervising the work of the commercial fundraiser under the contract."

18.   Section 12599(i) requires "a commercial fundraiser for charitable purposes and a charitable organization" to enter into a written contract that shall be available for inspection by the Attorney General "for each solicitation campaign, event, or service, that shall be signed by the

authorized contracting officer for the commercial fundraiser and by an official of the charitable organization who is authorized to sign by the organization's governing body." The requirements of such a written contract include provisions that give the charitable organization important rights of control over any campaign, including, in subsection (i)(12)(c), the right to cancel campaigns that "conduct fundraising activities in a manner that causes or *could cause public disparagement of the charitable organization's good name or good will*." (Emphasis added.)

## IT IS UNLAWFUL FOR DEFENDANTS TO SOLICIT
## ON BEHALF OF CHARITABLE ORGANIZATIONS IN CALIFORNIA

19.   Inman and Indiegogo are commercial fundraisers for charitable purposes within the meaning of Cal. Govt. Code § 12599(a).

20.   Inman and Indiegogo are not registered with the Attorney General's Registry of Charitable Trusts pursuant to § 12599(b).

21.   Inman and Indiegogo have not filed the disclosures required by § 12599(c).

22.   Inman and Indiegogo have not filed the annual reports required by § 12599(d).

23.   Inman and Indiegogo are not exempt from registration, and therefore pursuant to subsection § 12599(m), they are prohibited from soliciting "in the state on behalf of a charitable organization."

## INMAN'S CONDUCT DISPARAGES THE IMAGE OF CHARITABLE FUNDRAISING,
## AND HE IS NOT QUALIFIED TO BE A COMMERCIAL FUNDRAISER

24.   Inman described himself in an online interview[1] published January 6, 2011:

---

[1] http://mixergy.com/matthew-inman-oatmeal-interview/

Inman: I work for myself and really no one can control what I say. So usually I tell them that I slept with their mom or I say the most vile, awful thing I can think of. *If you read my Twitter account, it is like Hitler's port-a-potty. It's the worst thing that you've ever seen, just this awful stuff that I say to my critics on there. Just to troll them, mostly. So that's usually how I respond to it. Like a drunk 15 year old, I think, is the best way to put it....*

Interviewer: What about in the beginning when you were going into Digg and you knew that if you won this group of people over, they'd send you massive traffic and if you turned them into haters, they'd bury you and you wouldn't get anything from them. At that point, weren't you nervous?

Inman: Yeah. At that point, I wouldn't have gotten on Digg and been like, "Hey, your mom and I made love under the stars. Ha ha ha. I liked it." That probably wouldn't go over so well. But now I'm kind of at this comfortable level. And part of my writing style and *the persona that I have online is sort of this crass, bloated, obese, drunk monster.* (Emphasis added.)

25.   Inman has announced his vindictive response to his real and imagined enemies by posting, within the source code of all of the webpages on his main website, www.theoatmeal.com, the following image and text, depicting himself as a pterodactyl that will "ptero-you a new asshole." A screencapture of the core of the source-code appears as follows:



26.   Following the link to http://pterodactyl.me leads the Internet user to a page on TheOatmeal.com where a video created by Inman and Sarah Donner depicts Inman, in his character as a carnivorous, prehistoric flying reptile that first rips the intestines out of a man's

anus, then flogs him with his entrails, then steals a pineapple from a boy, tears his head off,

flings it a girl and knocks here head off, then grinds up the girl's head up in a wood-chipper,

blends it with the pineapple, and drinks the grisly cocktail:

 

 

 

 

Inman's followers are by and large with technologically savvy young people eager to follow the

latest trend, who embrace Inman's brutal ideology of "tearing you a new asshole."

1

## THE DEFENDANTS' "BEAR LOVE" CAMPAIGN

2

3

27.   On June 11, 2012, Defendants published the webpage now appearing at

4

http://www.indiegogo.com/bearlovegood, as shown in Exhibit A attached hereto (the "Bear Love

5

campaign webpage").

6

28.   The Bear Love campaign webpage states as follows:

7

> "I run a comedy website called The Oatmeal.
8

> Last year I wrote a blog post about another website called
> FunnyJunk which stole a bunch of my comics and hosted them on
9

> their website without giving me credit. They apparently didn't like
> my blog post and recently FunnyJunk sent me a letter stating that
10

> unless I pay them $20,000 in damages they're going to file a
> federal lawsuit against me. You can view the letter along with my
11

> response here.
12

> Instead of mailing the owner of FunnyJunk the money, I'm going
> to send the above drawing of his mother. *I'm going to try and*
13

> *raise $20,000 and instead send it to the National Wildlife*
> *Federation and the American Cancer Society.*
14

> *I'm hoping that philanthropy trumps douchebaggery and greed.*
15

> More information here." (Emphasis added.)

16

29.   The statement that "FunnyJunk ... stole a bunch of my comics and hosted them on their
17

website without giving me credit" was false and misleading.  FunnyJunk, LLC ("FJ"), which was
18

and is Plaintiff's client, operates a website filled entirely with user-uploaded media content at
19

FunnyJunk.com.  FJ operates FunnyJunk.com in compliance with the Digital Millennium
20

Copyright Act, 17 U.S.C. § 512(c) (the "DMCA"), and had never uploaded Inman's comics to
21

the FunnyJunk.com website.  Nor had Inman ever sent DMCA takedown notices.  Rather, Inman
22

23

had posted statements on TheOatmeal.com accusing FJ of copyright infringement for
24

commercial gain, which was false.  Plaintiff's demand that Inman cease and desist from making
25

such statements was lawful, and the demand for payment of $20,000 reasonably reflected FJ's
26

estimate of advertising losses sustained due to the taint of being accused of engaging in willful
27

28

copyright infringement for commercial gain, a federal felony under 17 U.S.C. § 506(a)(1)(A) and 18 U.S.C. § 2319(b).

30. In order to initiate an Internet jihad against Plaintiff and FJ, Inman unloaded the contents of his "Hitler's porta-potty" on Plaintiff and FJ, drawing a misogynistic cartoon depicting an obese female dressed in her underwear, with pendulous breasts popping out of her brassiere, an enormous posterior distended by an overstretched thong, rouged cheeks, and a crudely-lipsticked mouth, calling out to an apparently disinterested brown bear half her size, "COME HURR AND LOVE MEEEE!" He described it as a "drawing of your mom seducing a Kodiak bear." A true copy of the webpage is attached as Exhibit A.

31. Collecting funds to donate to the National Wildlife Foundation and the American Cancer Society was not Inman's true purpose in launching the Bear Love campaign. Rather, the Bear Love campaign was launched to revile Inman's legal adversaries, Plaintiff and his client, and initiate a campaign of "trolling" and cybervandalism against them which has borne abundant toxic results, including criminal misconduct by Inman's Internet followers against Plaintiff in the form of repeated events of computer hacking and false personation in violation of Cal. Penal Code § 529, as further alleged *infra*.

32. Inman made his intention to utilize the Charitable Organization defendants as a "human shield" for his assault on Plaintiff and his client FJ clear when he summed up his attack with the statement addressed to FJ:

Consider this my philanthropic, kind-spirited way of saying:

# Fuck off.

33.  The Charitable Organization defendants are both registered charitable organizations with the Office of the Attorney General who appear in the Charitable Registry.  Neither NWF nor ACS have entered in the written contracts statutorily mandated by Section 12599(i) with Inman or Indiegogo, that would secure their rights to control the Bear Love campaign, receive a pre-agreed amount of revenue from the campaign, and give them the right and duty to campaign is being conducted in a manner that could cause public disparagement of the Charitable Organization defendants's good name and good will.  Although the Charitable Organization defendants have notified by Plaintiff in writing about the fact that the "Bear Love" campaign alleged *infra* is being conducted by Inman and Indiegogo in violation of the Act, and that the campaign is being conducted in a manner that could cause public disparagement of the Charitable Organization defendants's good name and good will, neither the ACS or the NWF have acted to disavow their association with the Bear Love campaign, thus lending their tacit approval to the use of their names to the Bear Love campaign.

## FIRST CLAIM FOR RELIEF
### FOR IMPOSITION OF A CHARITABLE TRUST UPON THE PROCEEDS OF THE BEAR LOVE CAMPAIGN SOLICITED BY VIOLATIONS OF THE ACT AND FALSE ADVERTISING IN VIOLATION OF B. & P. Code § 17500 Against Defendants Inman and Indiegogo

34.  Plaintiff re-alleges and incorporates by reference each and every allegation set forth herein as if set forth in full hereat.

35.  Indiegogo, that receives contributions using credit card payments or PayPal, currently reports the full amount of the funds collected by the Bear Love campaign as $169,700, as recorded in Exhibit A.  The Bear Love campaign is scheduled to continue until 11:59 p.m. on Monday, June 25, 2012, so the full amount of the funds that will be raised by the Bear Love

campaign is an unascertained number well in excess of this Court's jurisdictional requirement, hereinafter referred to as the "Charitable Fund."

36.   The Indiegogo contract provides that it will keep 9% of the Charitable Fund and pay the remainder to Inman.

37.   Inman's stated intention is to turn over only $20,000 of the amount raised by the Bear Love campaign to the NWF and the ACS, presumably splitting that amount between the two Charitable Defendants.

38.   Plaintiff is a contributor to the Bear Love campaign, and made his contribution with the intent to benefit the purposes of the NWF and the ACS.  Plaintiff is acting on his own behalf and to protect the rights of all other contributors to the Bear Love campaign to have their reasonable expectation that 100% of the money they contributed would go to a charitable purpose.  Plaintiff opposes the payment of any funds collected from the Bear Love campaign to Indiegogo, on the grounds that the contract between Indiegogo and Inman is an illegal contract that violates the Act, and its enforcement may be enjoined.  Plaintiff opposes the payment of any funds to Inman because he is not a registered commercial fundraiser, because he failed to enter into a written contract with the Charitable Organization defendants, because the Bear Love campaign utilized false and deceptive statements and insinuations of bestiality on the part of Plaintiff and his client's "mother," all of which tends to bring the Charitable Defendants and the institution of public giving into disrepute.

39.   Indiegogo has not right to receive 9% of the Charitable Fund, and Inman is not entitled to receive any portion of the Charitable Fund, because they were not registered as a commercial fundraiser, had no written contract with the Charitable Defendants, failed to provide the statutory notice to the Attorney General of prior to its initiation of the Bear Love campaign.  Further,

Inman's use of vile, despicable insinuations of bestiality directed toward the mother of Plaintiff and/or his client were unfair solicitations prohibited by Section 12599(f) of the Act, fighting words, and incitements to commit cybervandalism, none of which are entitled to constitutional protection, and perverted the socially-uplifiting purpose of public giving for the malicious, vindictive purpose of harassing and causing pecuniary damage to Plaintiff, as further alleged *infra.*

40.   The funds collected by Indiegogo under the Bear Love campaign are subject to a charitable trust for the sole benefit of NWF and ACS pursuant to Section 12599(f) of the Act.

41.   NFW and ACS have failed to perform their statutory duty to exercise authority over the Bear Love campaign.

42.   The Fundraising Defendants and the Charitable Organization defendants are all "persons" within the meaning of California's Business and Professions Code § 17201.

43.   The acts of the Fundraising Defendants as alleged hereinabove are acts of false advertising made unlawful by California's Business and Professions Code § 17500, in that, through publication on Inman's Site and the Indiegogo site, they lead donors to the Bear Love campaign to believe that they were authorized to solicit funds under California law for the Charitable Organization defendants, when in truth and in fact, in the exercise of reasonable care they should have known that this was untrue and misleading and would tend to mislead a reasonable consumer.

44.   Plaintiff and the other contributors to the Bear Love campaign have no remedy at law; wherefore, injunctive relief pursuant to § 12599(f) of the Act and Cal. Business & Professions Code § 17535 is required to secure a lawful disposition of the proceeds of the Bear Love campaign. If not enjoined, the unlawful conduct is likely to continue and recur.

45.   Plaintiff requests an award of attorneys fees pursuant to Cal. Code of Civil Procedure §

1021.5 as a public attorney general benefitting the public interest in enforcement of the Act.

### SECOND CLAIM FOR RELIEF
#### Use Of A False Designation In Violation Of Section 43(a)
#### of the Lanham Act, 15 U.S.C. § 1125(a)
#### Against Inman and Doe 1

46.   Plaintiff re-alleges and incorporates by reference each and every allegations set forth herein

as if set forth in full hereat.

47.   Plaintiff holds a trademark on his name, Charles Carreon, USPTO Registration No.

3,749,709 for use in the provision of Legal Services, in Class 45.

48.   Plaintiff has a Twitter account under the name "@charlescarreon."

49.   On June 14, 2012, Doe 1, incited by Inman, or in the alternative and on information and

belief, Inman himself, registered the Twitter name "@Charles_Carreon," and began publishing

fake "tweets" on Twitter that were of immediately attributed to Plaintiff.  This was not only an

act of trademark infringement, but also false personation in violation of California Penal Code §

529.

50.   The fake tweets from @Charles_Carreon were abrasive and provoking to other Twitter

users, and engendered immediate negative responses, having the effect of intensifying public

hostility toward Plaintiff, and causing him irreparable harm in the marketplace for legal services.

Plaintiff makes it a practice to engage in tempered speech even on matters of heated debate, and

does not sling insults like "dumbass" and "idiot."  Nor was it Plaintiff's attempt to use his

Twitter account @charlescarreon to engage in verbal combat with other Twitter users.

51.   On June 14, 2012, Plaintiff learned of that he was being impersonated for malicious

purposes when he received an email from a friendly Twitter user.  Attached as Exhibit B are

screencaptures of various Twitter exchanges in which Doe1 or Inman intentionally provoked

other Twitter users. After receiving an authentication of identity letter from Plaintiff, on June 15, 2012, Twitter deactivated the fake Twitter account.

52. The infringement of Plaintiff's trademark by Doe 1 or Inman have actually caused confusion and mistake among consumers, have deceived consumers as to the affiliation, connection, or association of Doe 1 with Plaintiff, or alternatively and conjunctively, have confused, caused mistake among, and deceived consumers as to the affiliation, connection or association between Plaintiff and Doe 1. Such false designations have also caused confusion as to the origin, sponsorship, or approval of "tweets" attributed to "Charles_Carreon" on Twitter, and are likely to cause such confusion, mistake and/or deception among consumers in the future. Some of the tweets made by "@Charles_Carreon" were intended to, and did inflame other Twitter users to deride Plaintiff, because they were provocatively phrased for that purpose, including the following:

- @Charles_Carreon to @Samuaraikintter: "I have backtraced the attack to Matt Inman's Internet Address. He needs to stop the attack or I will need to escalate this."

- @ Charles_Carreon to @shellscape: "This comparison makes complete sense. Idiot."

- @ Charles_Carreon [responding to] @johnandrews: "You sir, are a dumbass. I am doing what any sane individual would do.

Another fake tweet disclosed Plaintiff's private email address, so cybervandals could sign him up to random websites and send him hate-emails:

- @Charles_Carreon to all: "The contact form has been disabled: charlescarreon.com/temporarily-disabledun... Please contact me at chas@charlescarreon.com instead.

53.   On information and belief, Inman, either because he was tweeting as @Charles_Carreon or had incited Doe 1 to post as @Charles_Carreon, tweeted:

- Matthew Inman @Oatmeal:  "It's interesting to watch a man with his dick in a hornet's nest try to solve the problem by tossing his balls in as well."

54.   By reason of Doe 1's actions alleged herein, Plaintiff has suffered, and is likely to suffer irreparable injury to his business, good will and property.

55.   Inman has attempted to profit from the actions of trademark infringement by either himself and/or Doe 1 by capitalizing on the confusion to whip up enmity against Plaintiff and thereby fuel additional donations to the unfair and deceptive Bear Love campaign.

56.   By reason of Inman and Doe 1's actions alleged herein, Plaintiff is likely to suffer irreparable injury to its business, good will and property.  Plaintiff is entitled, pursuant 15 U.S.C. § 1117, to recover from them the damages sustained and will sustain as a result of Defendants' wrongful conduct as alleged herein.

57.   On information and belief, the above-alleged acts of infringement have been willful and taken without regard to the established rights of the Plaintiff.

58.   Plaintiff is entitled pursuant to 15 U.S.C. § 1116, to an injunction restraining Inman and Doe 1, their officers, agents and employees, and all persons acting in concert with them, from engaging in any further such acts of infringement in violation of the Lanham Act.

59.   Plaintiff has no adequate remedy at law.  Unless Defendants are enjoined from committing these unlawful acts as set forth above, Plaintiff will continue to suffer irreparable harm.

60. This is an exceptional case; wherefore Plaintiff is entitled to an award of its reasonable attorney's fees incurred in the prosecution of this action, pursuant to 15 U.S.C. § 1117.

### THIRD CLAIM FOR RELIEF
**Inciting and Committing Cybervandalism In the Nature of
Trespass to Chattels, False Personation, and Identity Theft
Against Inman and Does 1 - 100**

61. Plaintiff realleges and incorporates herein by reference each and every allegation set forth herein as if set forth fully hereat.

62. As noted above, Doe1 or Inman proliferated Plaintiff's email address via a fake tweet made by "@Charles_Carreon.com." Plaintiff had not posted the chas@charlescarreon.com email address anywhere on the Internet except where required by law and Internet regulations. (The email address appears on legal papers in PACER filings in cases where required by the rules of this and other U.S. District Courts; however, these filings are viewable only by PACER users. The email address was also used in the Whois registration database for various websites Plaintiff has registered for his benefit, and as by the authorized registrant/agent of various legal clients.) Inman or persons incited by Inman also proliferated the email address and Plaintiff's home address on social networking websites, again for the malicious purpose of enabling cybervandalism.

63. Cybervandalism is the act of invading, trespassing upon, and damaging the personal digital property of another. Inciting cybervandalism is the act of directing large numbers of Internet users, through email, Internet postings, social media communications, and unfair devices like the Bear Love campaign, to attack a target. Plaintiff was the target of cybervandalism in this case, and Inman incited the campaign with the intention of causing injury to plaintiff.

64. On June 13, 2012, at 9:28 p.m., either Inman or one of the persons named as Does 1 – 100 engaged in the act of trespass to chattels, cracking the password on Plaintiff's website at

http://www.charlescarreon.com and requesting to reset the password. Fortunately, the intrusion discovered instantly by Plaintiff who was sitting looking at his computer screen when he received an email from the website software system, and was able to retain control of the website by immediately changing the password using the hyperlink in the email.

65.   As of the time of this filing, in part due to the Twitter posting, and in part due to other postings of his email address on the Internet by Inman and or Does 1 – 100, Plaintiff has been signed up to the following websites using the chas@charlescarreon.com email address by Does 1 – 10, or on information and belief by Inman himself. These signups are all without Plaintiff's consent or knowledge, and count is presumably still rising. By creating these fake accounts, Does 1 – 10 or Inman will have the ability to continue infringing Plaintiff's name and engaging in identity theft by creating user profiles and ordering goods and services for which third parties will hold Plaintiff responsible:

- Saboom.com (pornography website)
- Tube8.com (pornography site that spread malware including Trojan-PSW.Win32launch, Hack Tool:Win32/Welevate.A, and Adware.Win32.Fraud)
- Dell.com (computer hardware website)
- IFWNewsletters.com (newsletter website)
- Baselinemag.com (newsletter website)

66.   The full extent of Plaintiff's damage due to such conduct is unknown and will be subject to calculation as this action proceeds, and the complaint shall be supplemented to allege an amount susceptible of proof at trial.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests entry of judgment in its favor and against Defendants as follows:

A.      A permanent injunction:

     1.      Imposing a charitable trust upon all assets in the possession of Indiegogo collected from Plaintiff and other donors, allocating half to the National Wildlife Foundation, half to the American Cancer Society, and none to Defendants;

     2.      Barring Doe 1, or alternatively Inman, from falsely personating Charles Carreon or using the Charles Carreon registered mark alone or in combination with other words, symbols or designs including in any manner;

     3.      Requiring Indiegogo to register as a California fundraiser before proceeding with any future charitable fundraising;

     4.      Requiring the NWF and the ACS to affirmatively require written contracts with all commercial fundraisers in the State of California and to police the activities of fundraisers in order to prevent future abuses, false advertising, and unfair practices;

B.      An award of actual damages suffered by Plaintiff in such amount as shall be established by proof;

C.      An accounting and disgorgement of Inman's and Indiegogo's ill-gotten profits, if any, from the conduct alleged herein;

E.      A finding that the infringements by Inman and Does 1 – 100 were willful, and/or that Plaintiff's recovery is inadequate based on Defendants' profits; wherefore treble damages are warranted pursuant to 15 U.S.C. § 1117(a);

F.      A finding that this is an exceptional case, and that an award to Plaintiff of its full costs and reasonable attorney's fees is therefore warranted pursuant to 15 U.S.C § 1117;

G.      An order pursuant to 15 U.S.C. § 1116(a), requiring Inman, Indiegogo, the NWF, and the ACS to file with the Court and serve on Plaintiff within thirty (30) days after service of an injunction order as requested herein, a report in writing under oath setting forth in detail the manner and form in which they have complied with the Court's Order;

H.      Punitive damages against Inman and Does 1 – 100 pursuant to California Civil Code § 3294;

I.      Such other and further relief that this Court may deem just and proper.

Dated:  June 15, 2012                        CHARLES CARREON, ESQ.

                                             Charles Carreon
                                             2012.06.15
                                             14:43:20 -07'00'

                                     By: _____
                                         CHARLES CARREON (127139)
                                         Attorney Pro Se for Plaintiff

**JURY DEMAND**

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a jury trial.

Dated:  June 15, 2012                          CHARLES CARREON, ESQ.

Charles
Carreon
2012.06.15
14:42:57 -07'00'

By: _____
CHARLES CARREON (127139)
Attorney for Pro Se for Plaintiff