# Exhibit A

**Janelle Cotton**

---

| | |
|---|---|
| **From:** | Charles Carreon, Esq. [chascarreon@gmail.com] |
| **Sent:** | Thursday, June 28, 2012 4:55 PM |
| **To:** | Venkat Balasubramani; corynne@eff.org; cindy@eff.org; steph@eff.org; Eugene Novikov; kurt@eff.org; Mark Lemley; mattz@eff.org; Ragesh Tangri; Grilli, Sarah; Kelvin.Gong@doj.ca.gov |
| **Subject:** | Carreon v. Inman / Ex Parte Application / Fwd: CV-12-3112-EMC |
| **Attachments:** | NOTICE.APP.TRO.pdf; CARREON.DEC.pdf; XIBS.pdf; PROPOSED.ORDER.TRO.pdf |

Counsel:

Please find attached the Ex Parte Application documents.  For some reason, the ECF system is balking when I try to upload them, so I have sent an email to the ECF Helpdesk to complete that task.  Accordingly, those of you who are on ECF will be notified of the filing by that means in due course.  I expect it will be accomplished this evening.

As you probably all know, Judge Chen is not hearing cases this week.  I myself have depositions all day tomorrow here in Tucson, and have requested a telephonic hearing in the Notice.

Very truly yours,
Charles
Charles Carreon, Esq.
2165 S. Avenida Planeta
Tucson, AZ 85710
Tel 1: 520-841-0835
Tel 2: 520-762-7314
Fax: 520-843-2083

This message may contain attorney-client and/or attorney work-product privileged material. If you are not the intended recipient, please first notify the sender and then delete the message and any attachment. Inadvertent disclosures shall not work a waiver of any privilege.

---------- Forwarded message ----------
From: **Charles Carreon, Esq.** <chascarreon@gmail.com>
Date: Thu, Jun 28, 2012 at 4:46 PM
Subject: CV-12-3112-EMC
To: ecfhelpdesk@cand.uscourts.gov

Dear ECF Helpdesk:

I am requesting assistance to file the attached Ex Parte Application that is being rejected by the ECF system and showing the following error code.  Please advise of what steps I should take next in order to get the files uploaded.

3:12-cv-03112-EMC Carreon v. Inman et al

ADRMOP,AO279

An Internal Error has occurred the error code is 48.

error:

An Internal Error has occurred the error code is 48.

Error call to backend server failed with (error:

An Internal Error has occurred the error code is 48.C

Thank you,
Charles Carreon, Esq.
2165 S. Avenida Planeta
Tucson, AZ 85710
Tel 1: 520-841-0835
Tel 2: 520-762-7314
Fax: 520-843-2083

This message may contain attorney-client and/or attorney work-product privileged material.  If you are not the intended recipient, please first notify the sender and then delete the message and any attachment.  Inadvertent disclosures shall not work a waiver of any privilege.

--

--
Charles Carreon, Esq.
2165 S. Avenida Planeta
Tucson, AZ 85710
Tel 1: 520-841-0835
Tel 2: 520-762-7314
Fax: 520-843-2083

This message may contain attorney-client and/or attorney work-product privileged material.  If you are not the intended recipient, please first notify the sender and then delete the message and any attachment.  Inadvertent disclosures shall not work a waiver of any privilege.

CHARLES CARREON, ESQ. (127139)
2165 S. Avenida Planeta
Tucson, Arizona 85710
Tel:  520-841-0835
Fax: 520-843-2083
Email: chas@charlescarreon.com

Attorney Pro Se for Plaintiff Charles Carreon

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHARLES CARREON<br><br>Plaintiff,<br><br>vs.<br><br>MATTHEW INMAN, INDIEGOGO, INC.,<br>NATIONAL WILDLIFE FEDERATION,<br>AND AMERICAN CANCER SOCIETY,<br>and Does 1 – 100,<br><br>Defendants,<br><br>and<br><br>KAMALA HARRIS, Attorney General of the<br>State of California,<br><br>A Person To Be Joined If<br>Feasible Under F.R.Civ.P. 19. | Case No.: CV-12-3112-EMC<br><br>**EX PARTE APPLICATION FOR<br>TEMPORARY RESTRAINING ORDER<br>AND ORDER TO SHOW CAUSE RE<br>PRELIMINARY INJUNCTION;**<br><br>**REQUEST TO ATTEND HEARING BY<br>TELEPHONE**<br><br>Judge:  Hon. Edward M. Chen<br>Courtroom: 5, 17th Floor<br>Date:  To be set<br>Time:  To be set |

TO ALL PARTIES AND THEIR COUNSEL OF RECORD HEREIN, PLEASE TAKE

NOTICE THAT Plaintiff hereby moves this Court *ex parte* pursuant to Local Rule 65-1 and

F.R.Civ.P. 65 for a Temporary Restraining Order and Order to Show Cause Regarding

Preliminary Injunction, to enjoin defendant Indiegogo, Inc. ("Indiegogo") pending trial of this

action from transferring the proceeds of the Bear Love campaign in the amount of not less than

$220,014 (the "Charitable Fund"), or any amount at all, to Matthew Inman ("Inman") or any

other entity, and requiring that the Charitable Fund be held as segregated funds by Indiegogo

pending distribution of the Charitable Fund to the designated beneficiaries of the Bear Love

campaign, to wit, defendants, the American Cancer Society and the National Wildlife Federation.

This Application is made on the grounds that Plaintiff and all other donors to the Charitable Fund will be irreparably harmed without injunctive relief, because pursuant to the operative contract between Inman and Indiegogo, 96% of the Charitable Fund will be disbursed to Inman, because Inman has denied Plaintiff's request to relinquish all right, title and interest in the Charitable Fund, because if the funds are disbursed to Inman, they may be lost, dissipated, and diverted from the charities in the names of which they were solicited, and because if the funds are disbursed to Inman he will be unjustly enriched by the amount of a tax-write-off that should lawfully be distributed pro-rata among all of the donors to the Charitable Fund.

This Application is based on the First Amended Complaint on file in this action, the Memorandum of Points and Authorities submitted herewith, the Declaration of Charles Carreon, the files and records of the action, and such other evidence and argument the Court considers.

Notice of this Application has been and will be provided in compliance with Local Rule 7-1- and 65-1. As averred in ¶ 32 of the Carreon Declaration, Dep. AG Kelvin Gong of the Office of Attorney General for the State of California (the "AG") has accepted service of process via email for the, and Plaintiff has undertaken to promptly provide him with notice when and if the Court sets a hearing in the matter. As averred at ¶ 35 of the Declaration of Charles Carreon submitted herewith, defendants Inman and Indiegogo have appeared through counsel and received notice of this Application through the ECF System. As averred in ¶ 36 of the Carreon Declaration, service on defendant the American Cancer Society has been accomplished by email service on their counsel. As averred in ¶ 36 of the Carreon Declaration, service of this Application on defendant National Wildlife Federation is pending, and a proof of service will be filed shortly.

For the reasons set forth in ¶ 38 of the Carreon Declaration, plaintiff requests to attend any hearing on this matter by telephone.

Dated: June 28, 2012                          CHARLES CARREON, ESQ.


                                              By:s/Charles Carreon
                                              CHARLES CARREON (127139)
                                              Attorney for Plaintiff Pro Se

CHARLES CARREON, ESQ. (127139)
2165 S. Avenida Planeta
Tucson, Arizona 85710
Tel:  520-841-0835
Fax: 520-843-2083
Email: chas@charlescarreon.com

Attorney Pro Se for Plaintiff Charles Carreon

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHARLES CARREON | ) Case No.: CV-12-3112-EMC |
| Plaintiff, | ) |
| | ) **MEMORANDUM OF POINTS AND** |
| vs. | ) **AUTHORITIES IN SUPPORT OF EX** |
| | ) **PARTE APPLICATION FOR** |
| MATTHEW INMAN, INDIEGOGO, INC., | ) **TEMPORARY RESTRAINING ORDER** |
| NATIONAL WILDLIFE FEDERATION, | ) **AND ORDER TO SHOW CAUSE RE** |
| AND AMERICAN CANCER SOCIETY, | ) **PRELIMINARY INJUNCTION** |
| and Does 1 – 100, | ) |
| | ) |
| Defendants, | ) Judge:  Hon. Edward M. Chen |
| | ) Courtroom: 5, 17th Floor |
| and | ) Date:  To be set |
| | ) Time:  To be set |
| KAMALA HARRIS, Attorney General of the | ) |
| State of California, | ) |
| | ) |
| A Person To Be Joined If | ) |
| Feasible Under F.R.Civ.P. 19. | ) |

**MEMORANDUM OF POINTS AND AUTHORITIES**

**ISSUES**

1.  Is this Court likely to find that the Charitable Fund is subject to a charitable trust because it was gathered by unregistered charitable fundraisers, representing that the Bear Love campaign was endorsed by the National Wildlife Federation and the American Cancer Society, and that the entire proceeds would be donated exclusively to those two charities?

2.  Are the rights of the 14,406 Bear Love campaign donors who intended to benefit the National Wildlife Federation and the American Cancer Society likely to be irreparably harmed if Indiegogo transfers $211,223.04 of the Charitable Fund to Inman?

**3.**     Are the rights of the 14,406 donors and the intended beneficiaries of their generosity, the National Wildlife Federation and the American Cancer Society, likely to be harmed if Indiegogo transfer $211,223.04 of the Charitable Fund to Inman?

**4.**     If the 14,406 donors do not receive any tax deductions for donations that they intended to make to the National Wildlife Federation and the American Cancer Society, two tax-exempt entities, are their rights likely to be harmed?

**5.**     If Inman donates some or all of the Charitable Fund to tax-exempt charities, is Inman likely to be unjustly enriched by receiving a tax write-off for $211,223.04?

**6.**     Does the balance of the equities tip in favor of issuing a temporary restraining order?

**7.**     Will it benefit the public interest to issue a temporary restraining order?

## I.     FACTS

Indiegogo is a "worldwide crowdfunding system" that provided Inman with "global exposure" and "one-click social media integration, direct email and announcement features" that "make it easy to spread the word, raise awareness and increase funding."  (Exhibit A; Carreon Dec. ¶ 4.)  On or about June 11, 2012, Inman and Indiegogo each became the agents of the other, on the terms set forth in the Indiegogo Contract attached as Exhibit A.  Paragraphs 3 – 5 of the Indiegogo Contract designate Inman as the "Project Entity" to receive all of the "Contributions" elicited through Indiegogo's "crowdfunding" mechanism, minus "a 9% marketplace processing fee retained by Indiegogo," of which 5% will be rebated back to Inman when he reaches the funding goal, for a net take of 96%.  (Exhibit A.)

Although plainly acting as commercial fundraisers for charitable purposes, neither Inman nor Indiegogo complied with any of the requirements of California law applicable to commercial fundraisers for charitable purposes, as detailed *infra*.  (Carreon Dec. ¶¶ 11 – 13.)  Nevertheless, Inman and Indiegogo launched and marketed a campaign of charitable solicitation dubbed "BearLove Good – Cancer Bad" (the "Bear Love campaign"), in which they represented that the proceeds of the Bear Love campaign, or some portion thereof, would go to the National Wildlife Federation ("NWF") and the American Cancer Society ("ACS").  (Exhibit B.)

Plaintiff is a donor with standing to invoke the Court's injunctive authority to impose a charitable trust upon the proceeds of the "Bear Love" campaign, that concluded on June 26, 2012, with 14,406 donors contributing a total of $220,024.  (Carreon Dec. ¶10 and Exhibit C; Carreon Dec. ¶¶ 20 – 22 and Exhibit G.)  Inman stands to receive 96% of that amount, a total of $211,223.04, that he intends to turn into cash and photograph himself with as a publicity stunt. "Once the money is moved, I still plan on withdrawing $211k in cash and taking a photo to send to Carreon …." (Exhibit G; Carreon Dec. ¶ 26.)

Because no safeguards exist to prevent Inman from simply diverting this very substantial fund of money to his own use, and because even in the best case scenario, Inman will be unjustly enriched by securing an enormous tax-deduction that should properly be allocated pro-rata amongst all 14,406 donors, this Court should impose a constructive charitable trust upon the money.  Accordingly, pending a hearing on Plaintiff's motion for preliminary injunction, the Court is respectfully requested to enter a Temporary Restraining Order restraining Indiegogo from paying any of the money to Inman.

## II.   ARGUMENT

### A.   A Donor To A Charitable Fund Has Standing To Seek Injunctive Relief To Enforce a Constructive Charitable Trust

Plaintiff is a donor to the Bear Love campaign with standing to seek injunctive relief to restrain Indiegogo from transferring the money to Inman.  The California Supreme Court pronounced upon this issue in *Holt v. College of Osteopathic Physicians and Surgeons,* 61 Cal.2d 750 (1964):

> "***There is no rule or policy against supplementing the Attorney General's power of enforcement by allowing other responsible individuals to sue in behalf of the charity.***"
>
> *Holt v. College of Osteopathic Physicians and Surgeons,* 61 Cal.2d at 754 (emphasis added); *accord, L.B. Research & Education v. UCLA Foundation,* 130 Cal.App.4[th] 171, 176 (2005).
>
> "***[T]he right of the Attorney General to sue to enforce a charitable trust is not exclusive: other responsible individuals may be permitted to sue on behalf of the charity.***"
>
> *San Diego Etc. Boy Scouts of America v. City of Escondido,* 14 Cal.App.3d 189, 194 (1971) (emphasis added).

**B.      A Temporary Restraining Order Will Preserve The Status Quo**

Preliminary relief is intended to preserve the status quo and prevent irreparable harm while the underlying action is resolved.  *U.S. Philips Corp. v. KBC Bank N.V.,* 590 F.3d 1091, 1094 (9th Cir. 2010).

A request for a temporary restraining order is addressed to the Court's equitable authority.  "The trial court may grant a temporary restraining order or preliminary injunction in the exercise of its equitable powers." *Napa Valley Publishing Company, v. City of Calistoga,* 225 F.Supp. 1176, 1183 (N.D.Cal. 2002).

The Court's "analysis is substantially identical for a temporary restraining order and a preliminary injunction." *Stuhlbarg International Sales Co. v. John D. Brush & Co.,* 240 F.3d 832, 839, n. 7 (9th Cir. 2001).  "A preliminary injunction is a provisional remedy, the purpose of which is to preserve status quo and to prevent irreparable loss of rights prior to final disposition of the litigation." *Napa Valley Publishing, supra,* 225 F.Supp. at 1183.

"Generally, to obtain preliminary injunctive relief, a moving party must show a threat of irreparable injury and the inadequacy of legal remedies, the conventional requisites for equitable relief." *Napa Valley Publishing, supra,* 225 F.Supp. at *id., citing Arcamuzzi v. Continental Air Lines, Inc.,* 819 F.2d 935, 937 (9th Cir. 1987*)* and *Easyriders Freedom F.I.G.H.T. v. Hannigan,* 92 F.3d 1486, 1495 (9th Cir. 1996)

**C.      Plaintiff's Application Establishes the Four Factors That Must Be Established to Warrant the Issuance of A Temporary Restraining Order**

This Court recently restated the established law on granting injunctive relief, citing the United States Supreme Court's opinion in *Winter v. Natural Res. Def. Council,* 555 U.S. 7, 129 S. Ct. 365, 374, 172 L. Ed. 2d 249 (2008):

> "The Supreme Court has held that '[a] plaintiff seeking a preliminary injunction must establish that he is ***likely to succeed on the merits***, that he is ***likely to suffer irreparable harm*** in the absence of preliminary relief, that ***the balance of equities tips in his favor***, and that ***an injunction is in the public interest*.'"
>
> *Tamburri v. Suntrust Mortgage, Inc.,* 2011 U.S. Dist. LEXIS 72202, Case No. C-11-2899 (July 6, 2011).

**D.     Plaintiff Has Shown A Likelihood of Succeeding on The Merits.**

   **i.     Solicitations for A Charitable Purpose**

A "*solicitation for charitable purposes*" within the meaning of Section 17510.2 of the Disclosure Law *is "any request … to give money … in the name of any … charitable organization*," or any "*statement … that the gift or any part thereof will go to or be used for any charitable purpose or organization*."  Thus, the Bear Love campaign, that was made in the name of the NWF and ACS, and represented that the gift or some part thereof would go to these organizations, was clearly a "solicitation for charitable purposes."

   **ii.    Inman and Indiegogo Are Fiduciaries With Respect to the Charitable Fund and the Donors**

A fiduciary relationship exists between any person soliciting on behalf of a charity, and the person from whom a charitable contribution is being solicited.  Cal. B. & P. Code § 17510.8.

   **iii.   The Charitable Fund Accumulated By the Bear Love Campaign Is A Charitable Trust**

"A charitable trust is defined as: '… a fiduciary relationship with respect to property arising as a result of a manifestation of an intention to create it, and subjecting the person by whom the property is held to equitable duties to deal with the property for a charitable purpose.'"

*L.B. Research & Education v. UCLA Foundation,* 130 Cal.App.4[th] 171, 176 (2005), *quoting Hardman v. Feinstein,* 195 Cal.App.3d 157, 161 (1987).

The Disclosure Law makes it absolutely clear that soliciting in the name of a charity subjects the proceeds to a charitable trust exclusively dedicated to the purposes for which the donations were solicited.  This is a mere codification of "existing trust law principles."

"*The acceptance of charitable contributions by … any person soliciting on behalf of a charity establishes a charitable trust and a duty* on the part of … the person soliciting on behalf of the charity *to use those charitable contributions for the declared charitable purposes for which they are sought.  This section is declarative of existing trust law principles.*"

Cal. B. & P. Code § 17510.8. (Emphasis added.)

Inman's and Indiegogo's solicitation on behalf of NWF and ACS established a charitable trust.  They have no right to possession of the money raised from the Bear Love campaign.  The Court must enjoin payment of the money to Inman, and compel its payment to NWF and ACS.

### iv.   Inman and Indiegogo Are Unregistered Fundraisers Who Violated The "Supervision of Trustees and Fundraisers for Charitable Purposes Act"

In 1959, the California legislature enacted Calif. Gov. Code § 12580 *et seq.*, the Supervision of Trustees and Fundraisers for Charitable Purposes Act (the "Act").  Inman and Indiegogo are "commercial fundraisers," as defined by the Act:

> "'Commercial fundraiser for charitable purposes' means any individual, corporation, unincorporated association, or other legal entity who for compensation does any of the following:
>
> (1) Solicits funds, assets, or property in this state for charitable purposes.
>
> (2) As a result of a solicitation of funds, assets, or property in this state for charitable purposes, receives or controls the funds, assets, or property solicited for charitable purposes.
>
> (3) Employs, procures, or engages any compensated person to solicit, receive, or control funds, assets, or property for charitable purposes."

Cal. Govt. Code § 12599(a).

Before starting the Bear Love campaign, Inman and Indiegogo should have registered with the Attorney General to act as commercial fundraisers:

> "A commercial fundraiser for charitable purposes shall, prior to soliciting any funds … in California for charitable purposes, or prior to receiving and controlling any funds … as a result of a solicitation in this state for charitable purposes, register with the Attorney General's Registry of Charitable Trusts on a registration form provided by the Attorney General."

Section 12599(b).

As unregistered fundraisers, Inman and Indiegogo acted unlawfully in conducting the Bear Love campaign:

> "A commercial fundraiser for charitable purposes shall not solicit in the state on behalf of a charitable organization unless that charitable organization is registered or is exempt from registration with the Attorney General's Registry of Charitable Trusts."

Section 12599(m).

Their failure to comply registration and reporting requirements may be cured by entry of an injunction against solicitation by Inman and Indiegogo in California:

> "***Failure to comply with these registration or annual renewal and financial reporting requirements shall be grounds for***

> *injunction against solicitation in this state for charitable*
> *purposes and other civil remedies provided by law.*"

Section 12599(f). (Emphasis added.)

### E.   Inman and Indiegogo Made Actionable Misrepresentations In The Conduct and Execution of the Bear Love Campaign

Various misrepresentations in the conduct and execution of charitable solicitations are prohibited by the Act, "regardless of injury," including, *inter alia*:

- *Using any unfair or deceptive acts* or practices or engaging in any fraudulent conduct *that creates a likelihood of confusion or misunderstanding*.

- *Using any name … suggesting, or implying to a reasonable person that the contribution is to or for the benefit of a particular charitable organization when that is not the fact.*

- *Misrepresenting* or misleading anyone in any manner to believe *that any other person sponsors, endorses, or approves a charitable solicitation … when that person has not given consent in writing* to the use of the person's name for these purposes*.*

- *Misrepresenting* or misleading anyone in any manner to believe *that … a person has endorsement, sponsorship, approval, status, or affiliation that the person does not have.*

Cal. Gov. Code § 12599.6(f), subsections (2), (3), (5) and (6). (Emphasis added.)

As is set forth in detail in Plaintiff's declaration supporting this application, Inman and Indiegogo committed several actionable misrepresentations in the conduct and execution of the Bear Love campaign. *First,* they misrepresented that NWF and ACS sponsored, endorsed, or approved the Bear Love campaign, when NWF and ACS had not granted their permission at all, much less consent in writing.  (Carreon Dec. ¶¶ 12 – 13.)   *Second,* by using the names of NWF and ACS without permission, both of which are tax-exempt organizations, they led donors to believe that contributions would be tax-exempt, when in fact they would be going to Inman, and he himself would therefore garner any tax exemption.  (Exhibit B.)  *Third,* for several days, until he published his first "Update" to the Bear Love campaign, while well over a hundred thousand dollars streamed into the Charitable Fund from thousands of donors, he represented that the money would all go to NWF and ACS; however, he then altered his plan and said he would split the money four ways, giving some undesignated portion to "two new charities."  (Page 2 of Exhibit B.)  *Fourth,* they did not disclose Indiegogo's fees at any time, since there is no

"clickwrap" agreement to be signed digitally by donors at the time of contribution.  (Carreon Dec. ¶ 9.)   *Fifth,* they did not make any of the disclosures required by the Disclosure law, including the fact that they were unregistered fundraisers violating California law by even running the fundraiser in the name of NWF and ACS.  (Exhibit B.)

### F.   Inman and Indiegogo Violated The California Solicitation Disclosure Law

When the legislature enacted the Charitable Solicitations Disclosure Law in 1972 (the "Disclosure Law"), it established new remedies to deal with an identified problem:

> "The Legislature finds that *there exists in the area of solicitations and sales solicitations for charitable purposes a condition which has worked fraud, deceit and imposition upon the people of the state which existing legal remedies are inadequate to correct.* \*\*\* The Legislature declares that *the purpose of this article is to … encourage fair solicitations and sales solicitations for charitable purposes, wherein the person from whom the money is being solicited will know what portion of the money will actually be utilized for charitable purposes*."

Cal. Business & Professions Code § 17510. (Emphasis added).

### G.   Inman and Indiegogo Unlawfully Failed To Disclose Their Non-Tax-Exempt Status When Soliciting for The Bear Love Campaign

#### i.   The Requirement To Disclose Non-Tax Exempt Status

The Disclosure Law expressly applies to solicitations over the Internet, and requires the same disclosures made in printed material:

> "*If the initial solicitation* or sales solicitation *is made* by radio, television, letter, telephone, or any other means not involving direct personal contact with the person solicited, including *over the Internet, this solicitation shall clearly disclose the information required by Section 17510.3*."

Cal. B. & P. Code § 17510.4. (Emphasis added.)

Section 17510.3(a) of the Disclosure Law requires that "prior to any solicitation … for charitable purposes, the solicitor … shall exhibit to the prospective donor" documentation that states, *inter alia*:

> "*The non-tax-exempt status of the organization or fund, if the organization or fund for which the money or funds are being solicited does not have a charitable tax exemption under both federal and state law*."

Cal. B. & P. Code § 17510.3(a). (Emphasis added.)

ii.   **Inman's False Claims of Endorsement by the NWF and ACS, His Failure to Disclose The Bear Love Campaign's Non-Tax-Exempt Status, His Insistence On Maintaining His Status As Payee of The Money to Pull A Publicity Stunt, Demonstrate That He Is Not A Proper Fiduciary of A Charitable Trust**

The unprofessional manner in which Inman conducted the Bear Love campaign has led to exactly the type of situation that the Act and the Disclosure Law are meant to prevent.  A large fund of money has been collected from 14,046 people, each of whom have contributed very modest amounts of money, and only one of whom has been sufficiently motivated to investigate and initiate judicial action to make sure that the money raised is used in a manner consistent with the promises that were made during the course of the Bear Love campaign.  Indeed, the objectives of the Bear Love campaign have been a moving target.  Inman started out saying he would try to raise $20,000 for the NWF and ACS, but when the campaign proved surprisingly successful, he announced he would add two new "charities."  (Carreon Dec. ¶ 16.)  Then, at the close of the campaign, he reverted to his original plain, announcing that "unfortunately," in order to avoid litigation, the Charitable Fund would not be split four ways, and all the money would go to NWF and ACS after all. (Carreon Dec. ¶ 22; Exhibit G.)  Finally, while maintaining that "100%" of the money will go to charity, he has refused Plaintiff's request to simply relinquish all his claim, title and interest in the money (Carreon Dec. ¶ 19), and insists upon having it all paid to himself, so he can turn it into U.S. currency and photograph himself with the cash as a publicity stunt.  (Carreon Dec. ¶ 26; Exhibit G.)

Inman's mishandling of the Bear Love campaign illustrates the wisdom of the statutory scheme adopted by the legislature a half-century ago.  His enthusiasm for the project caused him to claim the endorsement of non-profit entities without their permission, and when the fund grew larger than he expected, he decided to expand the number of beneficiaries, not thinking that this would violate basic principles of charitable giving.  Although he induced many donors to donate, his desire to engage in showboating with the proceeds does not demonstrate the sober, responsible attitude appropriate to the trustee of a charitable fund.  ***Finally, Inman fails to see that in order to avoid taking improper advantage of his misappropriation of the names of NWF and ACS***, by means of which he led Bear Love donors to believe they were making tax

deductible donations, ***he cannot accept payment of the donations to himself***, and ***must allow them to be paid directly to NWF and ACS***, who alone are capable of issuing the appropriate tax-deductible-donation receipts to the 14,046 donors.

### H.    The Balance of the Equities Tips Sharply Against The Non-Moving Parties

Balancing the equities requires this Court to "look to the possible harm that could befall the various parties." *Maxim Integrated Products, Inc. v. Quintana,* 654 F.Supp.2d 1024, 1036 (2009), *citing Cytosport, Inc. v. Vital Pharm., Inc.,* 617 F.Supp. 2d 1051, 1081-1082 (E.D.Cal. 2009).  Denying a preliminary injunction to Plaintiff will result in irreparable harm, because once the money is transferred to Inman, there will no way to be sure it reaches the NWF and the ACS, no way to get it back and return it to the donors, and no way to re-apportion the tax-write-off to the donors.  Inman, on the other hand, has disclaimed any interest in the fund, except for wanting to use it in a publicity stunt.  The intended beneficiaries of the fund, ACS and NWF, although they have been made parties to the action and been given notice of this injunctive proceeding, have shown no interest in the matter.  Thus, the balance of the equities clearly tips in favor of granting the injunctive relief to preserve the status quo pending adjudication of the issues.

### I.    Public Policy

The last factor a court must consider is whether an injunction will favor the public interest in not being deceived or confused.  *Maxim Integrated Products, Inc. v. Quintana,* 654 F.Supp.2d at 1036, *citing Moroccanoil, Inc. v. Moroccan Gold, LLC,* 590 F.Supp.2d 1271, 1282 (C.D.Cal.2008).  Where the injunction will preserve a fund for a charitable purpose, and prevent it from being diverted to private purposes, issuing the injunction clearly favors public policy.

## III.   CONCLUSION

For all of the above reasons, the Court is respectfully requested to issue a Temporary Restraining Order and Order to Show Cause re Injunction in the form submitted herewith.

Dated:  June 28, 2012                      CHARLES CARREON, ESQ.


                                          By: _____
                                          CHARLES CARREON (127139)
                                          Attorney for Pro Se for Plaintiff

CHARLES CARREON, ESQ. (127139)
2165 S. Avenida Planeta
Tucson, Arizona 85710
Tel:  520-841-0835
Fax: 520-843-2083
Email: chas@charlescarreon.com

Attorney Pro Se for Plaintiff Charles Carreon

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHARLES CARREON<br><br>　　　　Plaintiff,<br><br>　　vs.<br><br>MATTHEW INMAN, INDIEGOGO, INC.,<br>NATIONAL WILDLIFE FEDERATION,<br>AND AMERICAN CANCER SOCIETY,<br>and Does 1 – 100,<br><br>　　　　Defendants,<br><br>　　and<br><br>KAMALA HARRIS, Attorney General of the<br>State of California,<br><br>　　　A Person To Be Joined If<br>　　　Feasible Under F.R.Civ.P. 19. | Case No.: CV-12-3112-EMC<br><br>**DECLARATION OF CHARLES<br>CARREON IN SUPPORT OF EX PARTE<br>APPLICATION FOR TEMPORARY<br>RESTRAINING ORDER AND ORDER<br>TO SHOW CAUSE RE PRELIMINARY<br>INJUNCTION**<br><br><br>Judge:  Hon. Edward M. Chen<br>Courtroom: 5, 17th Floor<br>Date:  To be set<br>Time:  To be set |

**DECLARATION OF CHARLES CARREON**

Charles Carreon declares:

**1.**  I am a member of the bar of the State of California, admitted to practice in all state and federal courts of the state, and attorney pro se for Plaintiff.  I make this declaration in support of Plaintiff's Ex Parte Motion for Temporary Restraining Order and Order to Show Cause Re Permanent Injunction, based on personal knowledge and an informed review of relevant documents.  If called as a witness I could and would so competently testify.

**BACKGROUND FACTS**

**2.**   I am an attorney, with a focus on Internet law, and often represent website owners.  On or about June 2, 2012, on behalf of a client, I sent a demand letter to defendant Matthew Inman ("Inman").  The matter giving rise to my sending the demand letter is not relevant to this lawsuit, but it is helpful to know that the amount I demanded was $20,000.

**3.**   Inman's lawyer, Venkat Balasubramani, sent me a reply letter that discussed the legal issues I had raised, and at its conclusion stated that Inman had posted his own personal response on his website, TheOatmeal.com ("Inman's site").

**4.**   After reading the response at Inman's site, I clicked on a hyperlink there, that brought up a webpage at Indiegogo.com, a "crowdfunding" website run by defendant Indiegogo, Inc. ("Indiegogo").  Inman contracted with Indiegogo pursuant to the terms of the "clickwrap" contract posted on the Indiegogo website, a true copy of which is attached as **Exhibit A** (the "Indiegogo Contract").  The Indiegogo contract makes Inman and Indiegogo agents of each for purposes of operating and offering fundraising ventures.  Pursuant to Paragraphs 3 – 5 of the Indiegogo, Inman designated himself as the "Project Entity" to receive all of the "Contributions" elicited through Indiegogo's crowdfunding mechanism, minus "a 9% marketplace processing fee retained by Indiegogo," of which 5% will be rebated back to Inman when he reaches the funding goal, for a net take of 96%.

**5.**   The Indiegogo Contract impose the following limitations on Inman's use of the website:

> **You agree not to post User Content that**: (i) **may create a risk of** harm, loss, physical or **mental injury, emotional distress**, death, disability, disfigurement, or physical or mental illness to you, to any other person, or to any animal; (ii) **may create a risk of any other loss or damage to any person or property**; (iii) **may constitute or contribute to a crime or tort**; (iv) **contains any information or content that we deem** to be unlawful, harmful, **abusive**, racially or ethnically offensive, defamatory, infringing, invasive of personal privacy or publicity rights, **harassing, humiliating to other people (publicly or otherwise)**, **libelous, threatening, or otherwise objectionable;** ….
>
> ### THE BEAR LOVE CAMPAIGN

**6.**   Inman launched a fundraising campaign with a fundraising goal of $20,000, that appeared on a webpage on the Indiegogo.com website.  A true and correct screencapture of  the webpage is

---

attached hereto as page 1 of **Exhibit B** (the "Bear Love campaign").  Inman announced on the Bear Love campaign webpage that instead of paying the $20,000 demand, he was going to try to raise $20,000 for the National Wildlife Foundation ("NWF") and the American Cancer Society ("ACS"), take a photo of the money, and send it to me along with a picture of a woman "seducing a Kodiak bear."[1]  Quoting directly from page one of **Exhibit B** for the Court's convenience:

> "Instead of mailing the owner of FunnyJunk the money, I'm going to send the above drawing of his mother.  ***I'm going to try and raise $20,000 and instead send it to the National Wildlife Federation and the American Cancer Society.***"
> (Emphasis added.)

**7.**   A hyperlink on the Bear Love campaign webpage on the Indiegogo site lead directly to a page on Inman's own website where he made the true intention of the Bear Love campaign unmistakably clear with this statement addressed to me and my client:  "Consider this my philanthropic, kind-spirited way of saying: F*ck off."  Page 2 of **Exhibit B**.

**8.**   Inman's Bear Love campaign grew in popularity very quickly, and within hours had raised much more than $20,000.

### CONTRIBUTION TO THE BEAR LOVE CAMPAIGN

**9.**   Based on what I saw on page one of **Exhibit B**, I understood that if I clicked to contribute, Indiegogo would give $5 to ACS and $5 to NWF.  When I clicked on the "contribution" button, I was not required to check off any box indicating my assent to any contractual terms whatsoever. It was a seamless transaction that provided me with no information to supplement what I could see on page one of **Exhibit B**.

**10.** With the expectation that I would be making a tax-deductible donation to two widely-respected, trustworthy charities dedicated to the elimination of cancer the protection of wildlife, respectively, I donated $10 to the Bear Love campaign, and received the receipt attached as **Exhibit C**.

### UNREGISTERED STATUS OF DEFENDANTS INMAN AND INDIEGOGO

---

[1] Whether the woman depicted in Inman's picture is my mother or my client's mother is the subject of heated Internet debate.

**11.** After researching in California law, I concluded that Inman and Indiegogo were commercial fundraisers within the meaning of Cal. Gov. Code § 12599(a), so I searched for them in the California Attorney General's database of charitable fundraisers, with a null result, as recorded in **Exhibit D**, that are true and correct screencaptures from the Attorney General's website.

### PRE-FILING COMMUNICATIONS WITH THE CHARITABLE ORGANIZATIONS

**12.** I contacted the media representative for ACS, David Sampson, and asked him if Inman had ACS's permission to use ACS's name in the Bear Love campaign.  He said that ACS had not given Inman permission.  Mr. Sampson gave me his email address, and I sent him the email attached as **Exhibit E**, advising that I wanted to assist ACS to secure 50% of all the money raised.  I did not receive a "bounce notice" from Gmail, and thus conclude that Mr. Sampson received the email.  However, I never received a reply.

**13.** I sent an email to the General Counsel for NWF, Barbara McIntosh,[2] a copy of which is attached as **Exhibit F**, asking if NWF had given Inman permission to use its name in the Bear Love campaign.  I did not receive a "bounce notice" from Gmail, so I conclude Ms. McIntosh received the email.  However, I have never received a reply.

### THE INITIAL COMPLAINT

**14.** I sued Inman and Indiegogo, alleging they were not authorized to run the Bear Love campaign on behalf of NWF and ACS, because they were unregistered charitable fundraisers, lacked the necessary written contracts with NWF and ACS that are required by law, had failed to provide the 10-day statutory notice required before commencing a charitable fundraising campaign in California, and that for those and other reasons, (a) Indiegogo should be enjoined from disbursing any funds to Inman and (b) a charitable trust should be imposed upon the Charitable Fund.

**15.** I also alleged Inman was going to donate $10,000 to NWF and $10,000 to ACS and keep all amounts over $20,000.  In the prayer for relief to the initial complaint, I requested that Inman

---

[2] Ms. McIntosh was identified as NWF General Counsel by a document authored by her on an NWF website at http://nwfaffiliates.org/ht/a/GetDocumentAction/i/103248.  The document is of recent vintage, and concludes with the statement:  "Please remember to submit the attached form by April 8, 2011. If you have any questions, please contact Barbara McIntosh, NWF General Counsel, at (703) 438-6284 or mcintoshb@nwf.org."  I also called the telephone number listed and left her a detailed voicemail.

receive none of the money and that Indiegogo be compelled to pay all of the money gathered by the Bear Love campaign (the "Charitable Fund") to NWF and ACS.

### THE FIRST AMENDED COMPLAINT

**16.** After I filed the complaint, a reporter called me and asked why I had alleged Inman was going to keep all of the Bear Love campaign money in excess of $20,000.  I replied that Inman was not legally committed to do otherwise, whereupon the reporter told me that somewhere on the Internet, Inman had said all the money was going to charity, and he was going to add two additional charities to the list.  Accordingly, I researched online, and eventually discovered a blog post that directed me back to the Indiegogo website, where for the first time, I discovered that on or about June 13th, Inman had posted just what the reporter had attributed to him on the "Updates" tab of the Bear Love campaign:

> *"On another note: a lot of people have been asking what I plan to do with the extra money we raised over the initial $20,000. 100% of it is going to charity.  I'm going to add 2 more charities to the list, in addition to the ACS and the NWF."*

**17.** At that point I thought: "This is a bait and switch campaign."  Bear Love campaign donors didn't simply designate Inman to receive and disburse donations according to his liking.  We had donated to two charities -- ACS and NWF – and no others.  Thus, I further asked myself: "I wonder who those other two charities are that he is talking about?  Perhaps they are affiliated with Inman?"

### EFFORTS TO REACH A NEGOTIATED RESOLUTION TO AVOID FILING THIS APPLICATION FOR TEMPORARY RESTRAINING ORDER

**18.** It was clear to me that quite aside from the requirements of charitable fundraising law, Inman could not acquire a fund for one purpose and then dispose of it according to his discretion.  I and the other donors had a right to have our donations go to ACS and NWF, and nowhere else.  The simple answer seemed to be for Inman to simply relinquish any authority over the Charitable Fund, and allow Indiegogo to direct the money to ACS and NWF.  Accordingly, on Friday June 22nd, I sent a letter to Mr. Balasubramani as an email attachment, asking him if Inman would disclaim all interest in the Charitable Fund as part of a settlement.

**19.** Mr. Balasubramani declined my proposal in writing on Monday June 26th.

**THE CHARITABLE FUND AND INMAN'S ACTIONS WITH RESPECT THERETO**

**20.** The Bear Love campaign concluded on June 26, 2012, with 14,406 donors contributing a total of $220,024.

**21.** At 2:19 a.m. June 27, 2012, using the Indiegogo email system, Inman sent an email to all donors with a link to a webpage entitled "Operation BearLove Good, Cancer Bad has ended. Now what?" (**Exhibit G**.)

**22.** On the **Exhibit G** webpage, Inman announced he had decided to stick with his original plan to give the money exclusively to ACS and NWF, but blamed me for spoiling his plan to divide the Charitable Fund among "four charities instead of two":

> *"Previously I stated that because the amount raised was so much larger than expected I was going to divide the money into four charities instead of two, but unfortunately Carreon's lawsuit claims that I'm holding an 'illicit fundraiser' and not donating money where I said I would. To avoid further litigation with him, I decided to split the money between the original two charities."*

**23.** While Inman accurately states that I allege he acted unlawfully by gathering funds in the name of two charities with the intention of passing the money to four entities, the remainder of the statement is false. Inman has not relinquished his claim of ownership over the Charitable Fund, and has reached no compromise with me "to avoid further litigation."

**24.** Inman thus informed 14,406 donors to the Bear Love campaign that his decision not to divide the money four ways was the result of a compromise that I forced upon him. This is not true. There has been no compromise, for if there had been, Inman would have relinquished his assertion of control over the Charitable Fund, and Indiegogo would be directing the funds to the putative beneficiaries of the Bear Love campaign -- ACS and NWF. Instead, Inman is insisting upon retaining his role as the intermediary.

**25.** Inman claims that:

> *"Carreon has provided notice that he intends to ask the court for a restraining order which will stop the transfer of funds from Indiegogo. If we can't get that silly bullshit dismissed, the money could be held up for days, weeks or months. Assuming we can, I should have the money in about a week."*

**26.** However, the only thing that will slow down the process of getting the money to NWF and ACS is allowing Indiegogo to send the check to Inman, so he can cash it and pose for his photograph alongside a stack of U.S. currency:

> *"Once the money is moved, I still plan on withdrawing $211k in*
> *cash and taking a photo to send to Carreon…"*

**27.** Inman's desire to exercise ownership and possession of the Charitable Fund for purposes of a publicity stunt is the only thing delaying the transfer of the funds to NWF and ACS.

### FACTS ESTABLISHING THE RISK OF IRREPARABLE HARM

**28.** If Indiegogo pays Inman the money in the Charitable Fund, and Inman personally donates the money to NWF and ACS, he will be unjustly enriched by receiving a large tax write-off that should properly be allocated pro-rata to the 14,406 small donors who contributed to the Charitable Fund.  Indiegogo has a system for accepting donations on behalf of 501(c)(3) non-profit entities and issuing the appropriate receipt for tax.  A true copy of the webpage describing the functioning of that system, provided through PayPal, is attached as **Exhibit H** hereto. However, as **Exhibit H** makes clear, because Inman is not a non-profit corporation, and was misappropriating the apparent endorsement the NWF and ACS, he could not use the PayPal nonprofit donation system for the Bear Love campaign donors, and when I and other Bear Love campaign donors made our donation, we did not receive receipts evidencing a donation to a tax-exempt organization, even though the intended recipients of our donations, NWF and ACS, were tax-exempt entities.

**29.** I reasonably believe that I am typical of the other donors to the Bear Love campaign, in that I give small amounts to various charitable organizations on the Internet, often in the range of $5 - $20, using my credit card.  I keep the receipts as PDF documents in a folder on my computer to be forwarded to my accountant at tax time so I can claim the charitable contribution write-off.  I believe that I, and all of the other donors, are entitled to receive the tax write-off for our donations to NWF and ACS.

**30.** Making charitable donations over the Internet is convenient, and over the course of the year, I find that all the small donations add up to some measurable tax benefit. The same is certainly true of the other donors to the Bear Love fund.

**31.** Pilfering very small amounts of money from very large numbers of people is a stock mechanism for conducting computer and Internet fraud. Preventing Inman from exploiting the giving public in such a fashion is in the public interest.

### COMMUNICATIONS WITH COUNSEL FOR DEFENDANTS AND THE ATTORNEY GENERAL AND SERVICE OF PROCESS

**32.** I spoke with Kelvin Gong of the Attorney General's office this morning. He had already received the First Amended Complaint that I had delivered to one of his colleagues in the AG's office. I then sent a copy of all ex parte papers at his email address at kelvin.gong@doj.ca.gov. Mr. Gong told me that he had reviewed the papers, and was accepting of service of process on behalf of the Attorney General. We agreed that I will provide him with notice if the Court sets a hearing in the matter.

**33.** I provided written notice of my intention to file this ex parte application to Inman, Indiegogo, the American Cancer Society, the National Wildlife Federation, and the California Attorney General, by sending the emails and fax letters attached hereto jointly as **Exhibit I** to their respective offices.

**34.** I proposed a stipulated resolution of this matter with the attorneys for Indiegogo in a teleconference on which three attorneys were present, and I explained as much of the substance of the matters as was necessary to convey the rationale for the relief sought by this application. I then sent them the letter attached as **Exhibit J**.

**35.** The attorneys for Inman and Indiegogo have appeared in the action and thus will be served via ECF.

**36.** I spoke with the attorney for ACS, Sarah Grilli of Kilpatrick Townsend, and advised her that I would send her all of the papers supporting this ex parte application via email at rgrossman@kilpatricktownsend.com immediately after filing. Ms. Grilli agreed to accept service

of process of the ex parte papers on behalf of ACS, as set forth in the email attached as
**Exhibit K**.

**37.** With respect to counsel for NWF, I have not yet established communications with them.  I am endeavoring to establish communications with them to arrange for service via email.  If I am unable to establish contact with the NWF attorneys, I will serve the NWF agent for service of process and submit a proof of service so establishing.

### REQUEST TO ATTEND ORAL HEARING TELEPHONICALLY

**38.** My office is at 2165 S. Avenida Planeta, Tucson, Arizona 85710.  Based on my past experience in litigating actions in San Francisco, which I have often done, it would cost in the neighborhood of $1,000 in plane fare and lodging to attend a hearing in San Francisco, and entail approximately 36 hours of travel time to personally attend an oral hearing in San Francisco.  As a pro se plaintiff and sole practicioner paying all the costs of this action, this would impose a substantial hardship upon me.  Accordingly, I respectfully request the Court to permit me to appear telephonically at any hearing the Court wishes to schedule in this matter.

I hereby declare, pursuant to the provisions of 28 U.S.C. § 1746 (2), under penalty of perjury under the laws of the United States of America, that the foregoing is true and correct, and that this declaration was executed on this 28th day of June, 2012 at Tucson, Arizona.

_____
Charles Carreon

1
2
3
4
5
6

UNITED STATES DISTRICT COURT

7

NORTHERN DISTRICT OF CALIFORNIA

8

CHARLES CARREON                         )   Case No.: CV-12-3112-EMC
                                        )
9                   Plaintiff,          )   **[PROPOSED] EX PARTE TEMPORARY**
                                        )   **RESTRAINING ORDER AND ORDER**
10          vs.                         )   **TO SHOW CAUSE RE PRELIMINARY**
                                        )   **INJUNCTION**
11   MATTHEW INMAN, INDIEGOGO, INC.,    )
     NATIONAL WILDLIFE FEDERATION,      )
12   AND AMERICAN CANCER SOCIETY,       )
     and Does 1 – 100,                  )
13                                      )
                    Defendants,         )
14                                      )
                                        )
15          and                         )
                                        )
16   KAMALA HARRIS, Attorney General of the )
     State of California,               )
17                                      )
            A Person To Be Joined If    )
18          Feasible Under F.R.Civ.P. 19. )
     _____ )

19
20

## ORDER

21

## TO DEFENDANTS INDIEGOGO, INC. AND MATTHEW INMAN:

22

YOU ARE EACH ORDERED TO SHOW CAUSE at _____.m., on July __, 2012,

23

or as soon thereafter as counsel may be heard, in Courtroom _____, at the United

24

States Courthouse, 450 Golden Gate Avenue, San Francisco, California

25

_____, why (1) Indiegogo, Inc. ("Indiegogo") should not be

26

restrained and enjoined pending trial from transferring the $220,014 now in the

27

possession of Indiegogo, Inc. (the "Charitable Fund") to Matthew Inman ("Inman"), or to

28

any other person or entity, (2) a constructive charitable trust should not be imposed upon

the Charitable Fund, and (3) the Charitable Fund should not be deposited in a blocked account pending distribution of the Charitable Fund to the designated beneficiaries of the Bear Love campaign, to wit, the defendants, the American Cancer Society, and the National Wildlife Federation.

PENDING HEARING on the above Order to Show Cause, Indiegogo is HEREBY RESTRAINED AND ENJOINED from disbursing the Charitable Fund, or any portion thereof to Inman.

IT IS FURTHER ORDERED that this Order shall be served on Indiegogo no later than _____ days before the day set for hearing, with proof of service to be filed no later than _____ days before the date set for the hearing.

IT IS SO ORDERED.

Dated:  July __, 2012

_____
Hon. Edward M. Chen
UNITED STATES DISTRICT COURT JUDGE

Respectfully submitted this 28th day of June, 2012, by:

s/Charles Carreon
_____
CHARLES CARREON, ESQ. (127139)
2165 S. Avenida Planeta
Tucson, Arizona 85710
Tel:  520-841-0835
Fax: 520-843-2083
Email: chas@charlescarreon.com

Attorney for Plaintiff Pro Se

# Exhibit A

**❈indiegogo**     browse ▾     learn     create          Sign Up | Log In     search  ⊙

# Terms of Use

### Indiegogo, Inc.

### Terms of Use Agreement

This Agreement was last revised on May 6, 2010. Updates to this Agreement can be found here.

Welcome to Indiegogo.com, the website and online service of Indiegogo, Inc. ("Indiegogo" "we," or "us"). This page explains the terms by which you may use our service. By accessing or using the Indiegogo services, website and software provided through or in connection with the service ("Service"), you signify that you have read, understood, and agree to be bound by this Terms of Use Agreement ("Agreement"), whether or not you are a registered user of our Service.

We reserve the right to amend this Agreement at any time and without notice. If we do this, we will post the amended Agreement on this page and indicate at the top of the page the date the Agreement was last revised. Your continued use of the Service after any such changes constitutes your acceptance of the new Terms of Use. If you do not agree to any of these terms or any future Terms of Use, do not use or access (or continue to access) the Service.

### Use of Our Service

Indiegogo provides a place for the creative community to interact, share information, and support content creation. All visitors to Indiegogo.com, whether registered or not, are "Users." If you register with Indiegogo you become a "Member" and gain access to certain features, including the ability to post certain information about your creative project (a "Project" and "Project Posting") on the Service and interact with other Members about your Project.

Indiegogo grants you permission to use the Service as set forth in this Agreement, provided that: (i) you will not copy, distribute, or disclose any part of the Service in any medium; (ii) you will not alter or modify any part of the Service other than as may be reasonably necessary to use the Service for its intended purpose; and (iii) you will otherwise comply with the terms and conditions of this Agreement.

You do not have to register in order to visit Indiegogo. To access certain features of the Service, though, including posting, commenting on, following, or contributing to a Project, you will need to register with Indiegogo and create a Member account. Your account gives you access to the services and functionality that we may establish and maintain from time to time and in our sole discretion.

You may never use another Member's account without permission. When creating your account, you must provide accurate and complete information. You are solely responsible for the activity that occurs on your account, and you must keep your account password secure. You must notify Indiegogo immediately of any breach of security or unauthorized use of your account. Although Indiegogo will not be liable for your losses caused by any unauthorized use of your account, you shall be liable for the losses of Indiegogo or others due to such unauthorized use.

You may use your Settings to control your Member Profile and how other Members communicate with you. By providing Indiegogo your email address you consent to our using the email address to send you Service-related notices, including any notices required by law, in lieu of communication by postal mail. We may also use your email address to send you other messages, including changes to features of the Service and special offers.

You agree not to use or launch any automated system, including without limitation, "robots," "spiders," "offline readers," etc., that accesses the Service in a manner that sends more request messages to the Indiegogo servers than a human can reasonably produce in the same period of time by using a conventional on-line web browser. You agree not to collect or harvest any personally identifiable information, including account names, from the Service nor to use the communication systems provided by the Service for any commercial solicitation purposes.

Indiegogo may permanently or temporarily terminate, suspend, or otherwise refuse to permit your access to the Service without notice and liability, if, in Indiegogo's sole determination, you violate any of the Agreement, including the following prohibited actions: (i) attempting to interfere with, compromise the system integrity or security or decipher any transmissions to or from the servers running the Service; (ii) taking any action that imposes, or may impose at our sole discretion an unreasonable or disproportionately large load on our infrastructure; (iii) uploading invalid data, viruses, worms, or other software agents through the Service; (iv) impersonating another person or otherwise misrepresenting your affiliation with a person or entity, conducting fraud, hiding or attempting to hide your identity; (v) interfering with the proper working of the Service; or, (vi) bypassing the measures we may use to prevent or restrict access to the Service. Upon termination for any reason, you continue to be bound by this Agreement.

You may not use the Service for activities that: (i) violate any law, statute, ordinance or regulation; (ii) relate to sales of (a) narcotics, steroids, certain controlled substances or other products that present a risk to consumer safety, (b) drug paraphernalia, (c) items that encourage, promote, facilitate or instruct others to engage in illegal activity, (d) items that promote hate, violence, racial intolerance, or the financial exploitation of a crime, (e) items that are considered obscene, (f) items that infringe or violate any copyright, trademark, right of publicity or privacy or any other proprietary right under the laws of any jurisdiction, (g) certain sexually oriented materials or services, or (h) ammunition, firearms, or certain firearm parts or accessories, or (i) ,certain weapons or knives regulated under applicable law; (iii) relate to transactions that (a) show the personal information of third parties in violation of applicable law, (b) support pyramid or ponzi schemes, matrix programs, other "get rich quick" schemes or certain multi-level marketing programs, (c) are associated with purchases of real property, annuities or lottery contracts, lay-away systems, off-shore banking or transactions to finance or refinance debts funded by a credit card, (d) are for the sale of certain items before the seller has control or possession of the item, (e) are by payment processors to collect payments on behalf of merchants, (f), are associated with the following Money Service Business activities: the sale of traveler's checks or money orders, currency exchanges or check cashing,or (g) provide certain credit repair or debt settlement services; (iv) involve the sales of products or services identified by government agencies to have a high likelihood of being fraudulent; (v) violate applicable laws or industry regulations regarding the sale of (a) tobacco products, or (b) prescription drugs and devices; (vi) involve gambling, gaming and/or any other activity with an entry fee and a prize, including, but not limited to casino games, sports betting, horse or greyhound racing, lottery tickets, other ventures that facilitate gambling, games of skill (whether or not it is legally defined as a lottery) and

greybar and racing, lottery contest, other ventures that facilitate gambling, games of skill (whether or not legally defined as a lottery) and sweepstakes unless the operator has obtained prior approval from Indiegogo and the operator and customers are located exclusively in jurisdictions where such activities are permitted by law.

### Posting a Project

Indiegogo may provide you the opportunity to post your Project on Indiegogo to showcase and share certain information about the Project and elicit feedback and financial contributions from other Members. Your Project Posting is User Content (as defined below), and is subject to all the terms and conditions relating to User Content in this Agreement. It is a breach of this Agreement to post a false or misleading Project or to post false or misleading information in your Project Profile. Members who post Projects are sometimes referred to in this Agreement as "Content Creators."

### Project Fundraising

Indiegogo may provide you the opportunity to fundraise for your Project by soliciting financial contributions to support the Project from Members ("Contributions"). The rules governing fundraising for your Project (the "Fundraising Rules") are as follows:

1. The first step in launching a fundraising campaign using the Service is to create a project profile page and post a "Funding Request." To post a Funding Request, set your goal for the total Contributions you wish to raise during your current campaign ("Campaign Goal") and the date by which you'd like to raise the funds ("Campaign Deadline") on your Project Profile page. The Campaign Deadline can be between 1 and 120 days out. (Note, if you reach your campaign goal, you can post a new project to launch a campaign to fund the next phase of your project. The number of projects you can create is unlimited.)

2. You will be required to designate the legal entity to which funds will be directed (the "Project Entity"). By providing the name of your Project Entity to Indiegogo, you represent and warrant that you are an authorized representative of the Project Entity with the authority to bind the Project Entity to the terms of this Agreement, that the Project Entity is the legal entity responsible for the Project and accountable for the use of any funds raised for it on Indiegogo, and that you accept this Agreement on the Project Entity's behalf.

3. To receive Contributions, your Project Entity must establish an account (a "Funding Account") with the payment processor designated by Indiegogo at the time you post your Project (the "Processor"). You understand and agree that your Funding Account will be governed by your agreement with the Processor, and that Indiegogo shall have no liability for your Funding Account or your transactions or interactions with the Processor.

4. All Contributions made to a Project will be directed to the Project Entity's Funding Account, less a 9% marketplace processing fee retained by Indiegogo. All Contributions paid to a Project Entity will constitute "Project Funding," and the Indiegogo fee and all other Project Funding requirements will apply. Indiegogo is not responsible for any error or omission in the Funding Account information you provide. Unless automated by the Processor, Project Funding less 3rd party processing fees will be disbursed from the Funding Account to the Project Entity's bank account according to the Project's disbursement details (set in the Funding section of the Project Profile). All necessary fund transfers will be initiated within 5 business days of the campaign end date. It can then take up to 5 business days for the disbursed funds to arrive in your account.

5. When you reach your Campaign Deadline, your Funding Request will automatically close and no more Contributions will be accepted for your Project. You may make a new Funding Request any time after the end of your last Funding Request closes. If you reach your Campaign Goal by your Campaign Deadline, Indiegogo will pay you a 5% rebate on all funds raised during the campaign. Payments will be included in a funds transfer that will be initiated within 5 business days of the campaign end date. It can then take up to 5 business days for the disbursed funds to arrive in your account.

6. If your Project receives Project Funding by using Indiegogo's platform and tools (including without limitation Project Funding paid into your Finding Account), you agree to acknowledge Indiegogo by including the Indiegogo logo in the "Special Thanks" section of the credits/acknowledgement section of your completed project as follows: using either the black or white Indiegogo logo available in the Press section of Indiegogo.com, the logo should appear on its own line (i.e., no other text or images on the left or right), sized so that the "Indiegogo" lettering in the logo is at least three times the size of the credits' normal text.

7. You may offer non-monetary rewards for Contributions ("Perks"), provided that the offering of such Perks is lawful under all applicable laws, including without limitation state and federal securities laws, and otherwise complies with the terms and conditions of this Agreement. Any Project Funding payments may be subject to verification of the identity of you and the Project Entity, the use of funds, and the timeline of the project. The verification procedure may involve an interview and/or document review if deemed necessary and may vary from time to time in our sole discretion. You and the Project Entity agree that Project Funding may only be used on behalf of the Project, and that Project Funding will not be used for any other purpose. You agree that if at any time during while a Funding Request is open or within thirty (30) days of the close of a Funding Request, Indiegogo makes a good faith determination that the identity of you or the Project Entity or the timeline of the Project are not as identified in the Project Posting, or that the Project Funding has not been used solely on behalf of the Project, you will promptly refund the entire amount of Project Funding from such Funding Request to the Contributors. We may change the Fundraising Rules at any time upon notice to you. If you do not accept a change we make to the Fundraising Rules, your sole remedy shall be to terminate your Project Posting.

You shall have full responsibility for applicable taxes for all Project Funding paid to you under this Agreement, and for compliance with all applicable labor and employment requirements with respect to your self-employment, sole proprietorship or other form of business organization, and with respect to your employees and contractors, including state worker's compensation insurance coverage requirements and any U.S. immigration visa requirements. You agree to indemnify, defend and hold Indiegogo harmless from any liability for, or assessment of, any claims or penalties with respect to such withholding taxes, labor or employment requirements, including any liability for, or assessment of, withholding taxes imposed on Indiegogo by the relevant taxing authorities with respect to any Project Funding paid to you.

Indiegogo makes no guarantee regarding the number or amount of Contributions, or the amount of any Project Funding payment to be made to you or the Project Entity under this Agreement.

### Contributing to Projects

Indiegogo may provide you the opportunity to make Contributions to Project Postings on the Service. You may contribute to any Project with an open Funding Request in any amount you choose. You may contribute to as many Projects as you like.

It is solely your choice to contribute to a Project. You understand that making a Contribution to a Project does not give you any rights in or to that Project, including without limitation any ownership, control, or distribution rights, and that the Project Entity shall be free to solicit other funding for the Project, enter into contracts for the Project, allocate rights in or to the Project, and otherwise direct the Project in its sole discretion. You further understand that nothing in this Agreement or otherwise limits Indiegogo's right to enter into agreements or business relationships relating to Projects. Indiegogo does not guarantee that any Project's Campaign Goal will be met. Any Perks offered to you are between you and the Project Entity only, and Indiegogo does not guarantee that Perks will be delivered or satisfactory to you. Indiegogo does not warrant the use of any Project Funding or the outcome of any Project.

Contributions to Projects are nonrefundable. Under certain circumstances Indiegogo may, but is under no obligation to, seek the refund of Project Funding if the Project Entity misrepresents the Project or misuses the funds. You acknowledge and agree that all your Contributions are between

you, the Project Entity, and the Processor only, and that Indiegogo is not responsible for Contribution transactions, including without limitation any personal or payment information you provide to the Processor.

Indiegogo makes no representations regarding the deductibility of any Contribution for tax purposes. Please consult your tax advisor for more information.

## User Content

Some areas of the Service may allow Users to post feedback, comments, questions, and other information. Any such postings, together with Project Postings, constitute "User Content." You are solely responsible for your User Content that you upload, publish, display, link to or otherwise make available (hereinafter, "post") on the Service, and you agree that we are only acting as a passive conduit for your online distribution and publication of your User Content. You must be the owner of all the Intellectual Property Rights (as defined below) in the User Content you post, or have explicit permission from the owner(s) of all such rights to post the User Content on Indiegogo.

For the purposes of this Agreement, "Intellectual Property Rights" means all patent rights, copyright rights, mask work rights, moral rights, rights of publicity, trademark, trade dress and service mark rights, goodwill, trade secret rights and other intellectual property rights as may now exist or hereafter come into existence, and all applications therefore and registrations, renewals and extensions thereof, under the laws of any state, country, territory or other jurisdiction.

You agree not to post User Content that: (i) may create a risk of harm, loss, physical or mental injury, emotional distress, death, disability, disfigurement, or physical or mental illness to you, to any other person, or to any animal; (ii) may create a risk of any other loss or damage to any person or property; (iii) may constitute or contribute to a crime or tort; (iv) contains any information or content that we deem to be unlawful, harmful, abusive, racially or ethnically offensive, defamatory, infringing, invasive of personal privacy or publicity rights, harassing, humiliating to other people (publicly or otherwise), libelous, threatening, or otherwise objectionable; (v) contains any information or content that is illegal; (vi) contains any information or content that you do not have a right to make available under any law or under contractual or fiduciary relationships; or (vii) contains any information or content that you know is not correct and current. You agree that any User Content that you post does not and will not violate third-party rights of any kind, including without limitation any Intellectual Property Rights, rights of publicity and privacy. Indiegogo reserves the right, but is not obligated, to reject and/or remove any User Content that Indiegogo believes, in its sole discretion, violates these provisions. You understand that publishing your User Content on the Service is not a substitute for registering it with the U.S. Copyright, the Writer's Guild of America, or any other rights organization.

Indiegogo takes no responsibility and assumes no liability for any User Content that you or any other Users or third parties post or send over the Service. You understand and agree that any loss or damage of any kind that occurs as a result of the use of any User Content that you send, upload, download, stream, post, transmit, display, or otherwise make available or access through your use of the Service, is solely your responsibility. Indiegogo is not responsible for any public display or misuse of your User Content. You understand and acknowledge that you may be exposed to User Content that is inaccurate, offensive, indecent, or objectionable, and you agree that Indiegogo shall not be liable for any damages you allege to incur as a result of such User Content.

You are solely responsible for your interactions with other Indiegogo Users. We reserve the right, but have no obligation, to monitor disputes between you and other Users.

## License Grant

By posting any User Content on the Service, you expressly grant, and you represent and warrant that you have a right to grant, to Indiegogo a royalty-free, sublicensable, transferable, perpetual, irrevocable, non-exclusive, worldwide license to use, reproduce, modify, publish, list information regarding, edit, translate, distribute, publicly perform, publicly display, and make derivative works of all such User Content and your name, voice, and/or likeness as contained in your User Content, in whole or in part, and in any form, media or technology, whether now known or hereafter developed for use in connection with the Service.

Subject to the terms and conditions of this Agreement, you are hereby granted a non-exclusive, limited, personal license to use the Service. Indiegogo reserves all rights not expressly granted herein in the Service and the Indiegogo Content (as defined below). Indiegogo may terminate this license at any time for any reason or no reason.

## Assignment of Project-Related User Content

All User Content posted to a Project ("Project Feedback") shall be the sole and exclusive property of the Content Creator that posted that Project. You hereby assign to the Content Creator, or its designee, all your right, title and interest throughout the world in and to any and all Project Feedback you post to that Content Creator's Project. You hereby waive and irrevocably quitclaim to the Content Creator or its designee and Indiegogo any and all claims, of any nature whatsoever, that you now have or may hereafter have for infringement of any and all Project Feedback you post to that Content Creator's Project. If you post a Project, you acknowledge and agree that Indiegogo cannot take responsibility for your use of Project Feedback and you use Project Feedback at your own risk. You hereby agree to indemnify, defend and hold Indiegogo harmless from any liability arising from or relating to your use of Project Feedback.

## Use of Widgets

Indiegogo may give you the opportunity to post a "widget," or code that creates an Indiegogo graphic and a link to the Site, on your personal blog, social network profile, or other locations on the Internet. You agree that your use of Indiegogo widgets is subject to this Agreement, that you will not post any Indiegogo widget on a web page containing content that is prohibited under the "User Content" section of this Agreement, and that you will remove all Indiegogo widgets immediately upon termination of this Agreement.

## Our Proprietary Rights

Except for your User Content, the Service and all materials therein or transferred thereby, including, without limitation, software, images, text, graphics, illustrations, logos, patents, trademarks, service marks, copyrights, photographs, audio, videos, music, and User Content (the "Indiegogo Content"), and all Intellectual Property Rights related thereto, are the exclusive property of Indiegogo and its licensors. Except as explicitly provided herein, nothing in this Agreement shall be deemed to create a license in or under any such Intellectual Property Rights, and you agree not to sell, license, rent, modify, distribute, copy, reproduce, transmit, publicly display, publicly perform, publish, adapt, edit or create derivative works from any materials or content accessible on the Service. Use of the Indiegogo Content or materials on the Service for any purpose not expressly permitted by this Agreement is strictly prohibited.

## Eligibility

This Service is intended solely for Users who are thirteen (13) years of age or older, and any registration, use or access to the Service by anyone under 13 is unauthorized, unlicensed, and in violation of this Agreement. Indiegogo may terminate your account, delete any content or information that you have posted on the Service, and/or prohibit you from using or accessing the Service (or any portion, aspect or feature of the Service) for any reason, at any time in its sole discretion, with or without notice, including without limitation if it believes that you are under 13. If you are under 18 years of age you may use the Service only if you either are an emancipated minor, or possess legal parental or guardian consent, and are fully able and competent to enter into the terms, conditions, obligations, affirmations, representations, and warranties set forth in this Agreement, and to abide by and comply with this Agreement.

## Privacy

We care about the privacy of our Users. Click here to view our Privacy Policy. By using the Service, you are consenting to have your personal data transferred to and processed in the United States.

## Security

We have implemented commercially reasonable technical and organizational measures designed to secure your personal information from accidental loss and from unauthorized access, use, alteration or disclosure. However, we cannot guarantee that unauthorized third parties will never be able to defeat those measures or use your personal information for improper purposes. You acknowledge that you provide your personal information at your own risk.

## DMCA Notice

If you believe that your copyrighted work has been copied in a way that constitutes copyright infringement and is accessible via the Service, please notify Indiegogo's copyright agent, as set forth in the Digital Millennium Copyright Act of 1998 ("DMCA"). For your complaint to be valid under the DMCA, you must provide the following information in writing:

1. An electronic or physical signature of a person authorized to act on behalf of the copyright owner;
2. Identification of the copyrighted work that you claim has been infringed;
3. Identification of the material that is claimed to be infringing and where it is located on the Service;
4. Information reasonably sufficient to permit Indiegogo to contact you, such as your address, telephone number, and e-mail address;
5. A statement that you have a good faith belief that use of the material in the manner complained of is not authorized by the copyright owner, its agent, or law; and
6. A statement, made under penalty of perjury, that the above information is accurate, and that you are the copyright owner or are authorized to act on behalf of the owner.

The above information must be submitted to the following DMCA Agent:

Name: Danae Ringelmann
Attn: DMCA Notice
Company: Indiegogo, Inc.
Address: 301 8th Street, Suite 225
San Francisco, CA 94103
Telephone & Fax: 866-641-4646
Email: copyright@indiegogo.com

UNDER FEDERAL LAW, IF YOU KNOWINGLY MISREPRESENT THAT ONLINE MATERIAL IS INFRINGING, YOU MAY BE SUBJECT TO CRIMINAL PROSECUTION FOR PERJURY AND CIVIL PENALTIES, INCLUDING MONETARY DAMAGES, COURT COSTS, AND ATTORNEYS' FEES.

Please note that this procedure is exclusively for notifying Indiegogo and its affiliates that your copyrighted material has been infringed. The preceding requirements are intended to comply with Indiegogo's rights and obligations under the DMCA, including 17 U.S.C. 512(c), but do not constitute legal advice. It may be advisable to contact an attorney regarding your rights and obligations under the DMCA and other applicable laws.

In accordance with the DMCA and other applicable law, Indiegogo has adopted a policy of terminating, in appropriate circumstances and at Indiegogo's sole discretion, members who are deemed to be repeat infringers. Indiegogo may also at its sole discretion limit access to the Service and/or terminate the accounts of any Users who infringe any intellectual property rights of others, whether or not there is any repeat infringement.

## Additional Representations and Warranties

You shall be solely responsible for your own User Content and the consequences of posting or publishing it. In connection with User Content, you affirm, represent and warrant, in addition to the other representations and warranties in this Agreement, the following:

a. You are at least 18 years of age, and that if you are under 18 years of age you are either an emancipated minor, or possess legal parental or guardian consent, and are fully able and competent to enter into the terms, conditions, obligations, affirmations, representations, and warranties set forth in this Agreement, and to abide by and comply with this Agreement.

b. You have the written consent of each and every identifiable natural person in the User Content to use such person's name or likeness in the manner contemplated by the Service and this Agreement, and each such person has released you from any liability that may arise in relation to such use.

c. Your User Content and Indiegogo's use thereof as contemplated by this Agreement and the Service will not infringe any rights of any third party, including but not limited to any Intellectual Property Rights, privacy rights and rights of publicity.

## Third-Party Websites, Advertisers or Services

Indiegogo may contain links to third-party websites, advertisers, or services that are not owned or controlled by Indiegogo. Indiegogo has no control over, and assumes no responsibility for, the content, privacy policies, or practices of any third party websites or services. If you access a third party website from Indiegogo, you do so at your own risk, and you understand that this Agreement and Indiegogo's Privacy Policy do not apply to your use of such sites. You expressly relieve Indiegogo from any and all liability arising from your use of any third-party website or

services or third party owned content. Additionally, your dealings with or participation in promotions of advertisers found on Indiegogo, including payment and delivery of goods, and any other terms (such as warranties) are solely between you and such advertisers. You agree that Indiegogo shall not be responsible for any loss or damage of any sort relating to your dealings with such advertisers.

We encourage you to be aware of when you leave the Service, and to read the terms and conditions and privacy policy of any third-party website or service that you visit.

## Indemnity

You agree to defend, indemnify and hold harmless Indiegogo and its subsidiaries, agents, managers, and other affiliated companies, and their employees, contractors, agents, officers and directors, from and against any and all claims, damages, obligations, losses, liabilities, costs or debt, and expenses (including but not limited to attorney's fees) arising from: (i) your use of and access to the Service, including any data or work transmitted or received by you; (ii) your violation of any term of this Agreement, including without limitation, your breach of any of the representations and warranties above; (iii) your violation of any third-party right, including without limitation any right of privacy, publicity rights or intellectual Property Rights; (iv) your violation of any law, rule or regulation of the United States or any other country; (v) any claim or damages that arise as a result of any of your User Content or any that are submitted via your account; or (vi) any other party's access and use of the Service with your unique username, password or other appropriate security code.

## No Warranty

THE SERVICE IS PROVIDED ON AN "AS IS" AND "AS AVAILABLE" BASIS. USE OF THE SERVICE IS AT YOUR OWN RISK. THE SERVICE IS PROVIDED WITHOUT WARRANTIES OF ANY KIND, WHETHER EXPRESS OR IMPLIED, INCLUDING, BUT NOT LIMITED TO: IMPLIED WARRANTIES OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, OR NON-INFRINGEMENT. WITHOUT LIMITING THE FOREGOING, INDIEGOGO, ITS SUBSIDIARIES, AND ITS LICENSORS DO NOT WARRANT THAT THE CONTENT IS ACCURATE, RELIABLE OR CORRECT; THAT THE SERVICE WILL MEET YOUR REQUIREMENTS; THAT THE SERVICE WILL BE AVAILABLE AT ANY PARTICULAR TIME OR LOCATION, UNINTERRUPTED OR SECURE; THAT ANY DEFECTS OR ERRORS WILL BE CORRECTED; OR THAT THE SERVICE IS FREE OF VIRUSES OR OTHER HARMFUL COMPONENTS. ANY CONTENT DOWNLOADED OR OTHERWISE OBTAINED THROUGH THE USE OF THE SERVICE IS DOWNLOADED AT YOUR OWN RISK AND YOU WILL BE SOLELY RESPONSIBLE FOR ANY DAMAGE TO YOUR COMPUTER SYSTEM OR LOSS OF DATA THAT RESULTS FROM SUCH DOWNLOAD.

INDIEGOGO DOES NOT WARRANT, ENDORSE, GUARANTEE, OR ASSUME RESPONSIBILITY FOR ANY PRODUCT OR SERVICE ADVERTISED OR OFFERED BY A THIRD PARTY THROUGH THE INDIEGOGO SERVICE OR ANY HYPERLINKED WEBSITE OR SERVICE, OR FEATURED IN ANY BANNER OR OTHER ADVERTISING, AND INDIEGOGO WILL NOT BE A PARTY TO OR IN ANY WAY MONITOR ANY TRANSACTION BETWEEN YOU AND THIRD-PARTY PROVIDERS OF PRODUCTS OR SERVICES.

## Limitation of Liability

TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW, IN NO EVENT SHALL INDIEGOGO, ITS AFFILIATES, DIRECTORS, EMPLOYEES OR ITS LICENSORS BE LIABLE FOR ANY DIRECT, INDIRECT, PUNITIVE, INCIDENTAL, SPECIAL, CONSEQUENTIAL OR EXEMPLARY DAMAGES, INCLUDING WITHOUT LIMITATION DAMAGES FOR LOSS OF PROFITS, GOODWILL, USE, DATA OR OTHER INTANGIBLE LOSSES, THAT RESULT FROM THE USE OF, OR INABILITY TO USE, THIS SERVICE. UNDER NO CIRCUMSTANCES WILL INDIEGOGO BE RESPONSIBLE FOR ANY DAMAGE, LOSS OR INJURY RESULTING FROM HACKING, TAMPERING OR OTHER UNAUTHORIZED ACCESS OR USE OF THE SERVICE OR YOUR ACCOUNT OR THE INFORMATION CONTAINED THEREIN.

TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW, INDIEGOGO ASSUMES NO LIABILITY OR RESPONSIBILITY FOR ANY (I) ERRORS, MISTAKES, OR INACCURACIES OF CONTENT; (II) PERSONAL INJURY OR PROPERTY DAMAGE, OF ANY NATURE WHATSOEVER, RESULTING FROM YOUR ACCESS TO AND USE OF OUR SERVICE; (III) ANY UNAUTHORIZED ACCESS TO OR USE OF OUR SECURE SERVERS AND/OR ANY AND ALL PERSONAL INFORMATION STORED THEREIN; (IV) ANY INTERRUPTION OR CESSATION OF TRANSMISSION TO OR FROM THE SERVICE; (V) ANY BUGS, VIRUSES, TROJAN HORSES, OR THE LIKE THAT MAY BE TRANSMITTED TO OR THROUGH OUR SERVICE BY ANY THIRD PARTY; (VI) ANY ERRORS OR OMISSIONS IN ANY CONTENT OR FOR ANY LOSS OR DAMAGE INCURRED AS A RESULT OF THE USE OF ANY CONTENT POSTED, EMAILED, TRANSMITTED, OR OTHERWISE MADE AVAILABLE THROUGH THE SERVICE; AND/OR (VII) USER CONTENT OR THE DEFAMATORY, OFFENSIVE, OR ILLEGAL CONDUCT OF ANY THIRD PARTY. IN NO EVENT SHALL INDIEGOGO, ITS AFFILIATES, DIRECTORS, EMPLOYEES, OR LICENSORS BE LIABLE TO YOU FOR ANY CLAIMS, PROCEEDINGS, LIABILITIES, OBLIGATIONS, DAMAGES, LOSSES OR COSTS IN AN AMOUNT EXCEEDING THE AMOUNT YOU PAID TO INDIEGOGO HEREUNDER.

THIS LIMITATION OF LIABILITY SECTION APPLIES WHETHER THE ALLEGED LIABILITY IS BASED ON CONTRACT, TORT, NEGLIGENCE, STRICT LIABILITY, OR ANY OTHER BASIS, EVEN IF INDIEGOGO HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGE. THE FOREGOING LIMITATION OF LIABILITY SHALL APPLY TO THE FULLEST EXTENT PERMITTED BY LAW IN THE APPLICABLE JURISDICTION.

The Service is controlled and operated from its facilities in the United States. Indiegogo makes no representations that the Service is appropriate or available for use in other locations. Those who access or use the Service from other jurisdictions do so at their own volition and are entirely responsible for compliance with local law, including but not limited to export and import regulations. Unless otherwise explicitly stated, all materials found on the Service are solely directed to individuals, companies, or other entities located in the U.S.

## Assignment

This Agreement, and any rights and licenses granted hereunder, may not be transferred or assigned by you, but may be assigned by Indiegogo without restriction.

## General

A. Governing Law. You agree that: (i) the Service shall be deemed solely based in California; and (ii) the Service shall be deemed a passive one that does not give rise to personal jurisdiction over Indiegogo, either specific or general, in jurisdictions other than California. This Agreement shall be governed by the internal substantive laws of the State of California, without respect to its conflict of laws principles. Any claim or dispute between you and Indiegogo that arises in whole or in part from the Service shall be decided exclusively by a court of competent jurisdiction located in Santa Clara County, California.

B. Notification Procedures. Indiegogo may provide notifications, whether such notifications are required by law or are for marketing or other business related purposes, to you via email notice, written or hard copy notice, or through conspicuous posting of such notice on our website, as

determined by Indiegogo in our sole discretion. Indiegogo reserves the right to determine the form and means of providing notifications to our Users, provided that you may opt out of certain means of notification as described in this Agreement.

C. Entire Agreement/Severability. This Agreement, together with any other legal notices and agreements published by Indiegogo via the Service, shall constitute the entire agreement between you and Indiegogo concerning the Service. If any provision of this Agreement is deemed invalid by a court of competent jurisdiction, the invalidity of such provision shall not affect the validity of the remaining provisions of this Agreement, which shall remain in full force and effect.

D. No waiver of any term of this Agreement shall be deemed a further or continuing waiver of such term or any other term, and Indiegogo's failure to assert any right or provision under this Agreement shall not constitute a waiver of such right or provision.

Please contact us at terms@Indiegogo.com with any questions regarding this Agreement.


UPDATES TO THIS AGREEMENT:

January 18, 2008: We added prohibitions on false Project information in "Posting a Project," expanded and clarified the Fundraising Rules in "Project Fundraising," added the section "Funding Accounts," explained that Indiegogo is not responsible for Perks and modified the language relating to tax treatment of Contributions in "Contributing to a Project." and stated again that you must have the rights to post User Content in "User Content."

February 6, 2008: We added the following clarification to the section titled "Contributing to Projects": "You understand that making a Contribution to a Project does not give you any rights in or to that Project, including without limitation any ownership, control, or distribution rights, and that the Project Entity shall be free to solicit other funding for the Project, enter into contracts for the Project, allocate rights in or to the Project, and otherwise direct the Project in its sole discretion. You further understand that nothing in this Agreement or otherwise limits Indiegogo's right to enter into agreements or business relationships relating to Projects."

October 6, 2008: We revised the "Project Fundraising" and "Contributing to Projects" sections to state that when a Project does not meet its Campaign Goal, a contributor's options are to make the Contribution to the Project anyway, or have the Contribution returned to the contributor's Funding Account, and to include an acknowledgment requirement for funded projects.

November 21, 2008: We revised the "Project Fundraising" and "Contributing to Projects" sections to reflect the use of a third-party payment processor to handle Contribution transactions.

May 7, 2009: We added the following clarification to "Project Fundraising" section: "Unless automated by the Processor, Project Funding will be disbursed from the Funding Account to the Project Entity's bank account according to the Project's disbursement details (set in the Funding section of the Project Profile). All necessary fund transfers will take place on the Friday immediately following the point the disbursement preference criteria are met."

August 3, 2009: We revised "Project Fundraising section to clarify that the funding goal did not have to be the amount of contributions the project owner is looking to raise by the service in total but rather the amount needed to cover a specific phase of the project. We also clarified that 3rd party processing fees are removed from Project Funding upon disbursement.

September 9, 2009: We revised the "Use of Our Service" section to include content creators as well as the "Project Fundraising" section to clarify a project's acknowledgement requirements if it's successful with fundraising.

April 21, 2010: We revised the "Project Fundraising" section to reflect the introduction of cash rewards for achieving campaign goals and deadlines.

May 6, 2010: We added the "You may not use the Service for activities that" statement to the "Use of Our Service" section.

March 5, 2012: We revised the "Project Fundraising" section to reflect the latest processing times for fund transfers.

---

As seen in:   The New York Times   FST COMPANY   CNNMoney.com   VARIETY   Mashable   PBS

© 2012 Indiegogo Inc.
All Rights Reserved.

Terms
Privacy Policy
Distribution

Contact Us

Learn More
Why Indiegogo?
Features
Pricing
FAQ

Help

Customer Happiness
Campaigner
Contributor

About Us
Press
Careers

Visit our blog 

Sign up for Indiegogo News
enter email

http://www.indiegogo.com/contact/press

# Exhibit B





**2.** I'm going to take a photo of the raised money



**3.** I'm going to mail you that photo, along with this drawing of your mom seducing a Kodiak bear.



**4.** I'm going to take the money and donate one half to the National Wildlife Federation and the other half to the American Cancer Society.

## FunnyJunk:

I don't want to write retorts like this anymore.
I don't want to spend the next year tied up in legal bullshit with you.

### I just want to make comics.

Consider this my philanthropic, kind-spirited way of saying:

# Fuck off.

OPERATION

BEARLOVE GOOD. CANCER BAD.

NOW COMMENCING!





👍 Like   📷   💬 🧑👥👤👥👤   and 1718 others liked this.                🧑 DISQUS ⌄

## Add New Comment

Login

> Type your comment here.

Real-time updating is **paused**. (Resume)

## Showing 20 of 2743 comments

Sort by popular now ⌄



**Nicolas**

Can i upload this to funnyjunk?

4 days ago   3261 Likes                                    Like   Reply

**Dan Crittenden**

I want to carpet bomb the shit out of FJ with this letter

4 days ago   in reply to Nicolas   299 Likes ▐            Like   Reply

**Anonymous**                                             —

or if we show 4chan this, they wil hopefully go bananas on FJ

- that would be more effective

3 days ago   in reply to Dan Crittenden   428 Likes ▐      Like   Reply

**Anon**

we are not your personal army bitch now fuck off

- that would be more effective

3 days ago   in reply to Dan Crittenden   428 Likes          Like   Reply

**Anon**                                                  —

we are not your personal army bitch now fuck off

3 days ago   in reply to Anonymous   621 Likes ▐          Like   Reply

# Exhibit C



# Exhibit D



State *of* California Department *of* Justice

Office *of the* Attorney General                                    *Kamala D. Harris* ≈ Attorney General

Search

| Home | About the AG | In the News | Careers | Services & Information | Programs A - Z | Contact Us |

### CHARITIES

Charities Home

Charitable Giving

Registry Search

Commercial Fundraiser

CFR Search

FAQs

Filings and Searches

Forms

Laws/Regulations

Nonprofit Hospitals

Publications

Registry Online Filing

Raffles

Resources

Email Notifications

Subscribe

Contact the Registrar

## Filings and Searches

The Attorney General's Registry of Charitable Trusts is pleased to announce its new online search feature. The new search feature allows you to search for information on charities, charity fundraising professionals, and raffle registrants that are registered with the Registry. It also allows you to view some basic information regarding charities that either are not currently registered with our office or are exempt from registration and reporting to the Registry.

With a few exceptions, the new search feature does not currently provide access to electronic copies of documents filed with the Registry, including IRS Form 990s (informational returns) filed by charities. Electronic copies of filings by certain registrants, such as the annual financial reports filed by commercial fundraisers for charitable purposes, are available elsewhere on the Charities website. Access to these reports is available at CFR search.

To begin, use the Registry Search Feature, or use the Registry Search link on the left side of this page. The Registry's new search feature is best viewed using Internet Explorer. Access to some links within the application may not function properly using other web browsers. For help interpreting the information available on the "Search Results" screens, please review Registry Search Feature – What do the codes mean?

NOTE TO REGISTRANTS: The information that displays in the new search feature represents information currently in the Registry database. If you believe the information displayed for your organization is in error, you may send an email to the Registrar, using the Contact the Registrar link on the left side of this page. In that email, please set forth the information you believe to be incorrect and supply the documentation necessary to correct your record. **If your organization is incorporated, its name and facility address information must be updated with the Secretary of State's office in order to be corrected in our database.** Send an email to the Registry.

Taking time to learn about a charity before you donate can go a long way to making sure that the nonprofit organization and cause match your intentions. However, researching charities can be daunting when you consider that there are more than 700,000 federally recognized nonprofit organizations—nearly 150,000 of them in California—and no official "seal of approval" issued.

To help Californians in making important personal decisions on charitable giving, the Attorney General offers a variety of resources here. These resources include guides for charitable giving and searchable databases to learn about specific charities and commercial fundraisers in the state.

For charities and commercial fundraisers, we have forms and other information available to help them comply with state laws. We also have information on charitable fundraising raffles and corporate transactions involving the sale or purchase of nonprofit hospitals. We offer a Guide to the Nonprofit Integrity Act of 2004 ⚑ [PDF 170 kb / 8 pg], which concerns new requirements in the conduct of charities, commercial fundraisers, fundraising counsel, unincorporated associations, and trusts.

California law requires charities and commercial fundraisers to register with the Attorney General's Office and to file financial disclosure reports. All charities must file the Annual Registration Renewal Fee Report, and those with gross revenue or assets of $25,000 or more must file annual Form 990 financial reports with the Attorney General's Registry of Charitable Trusts. Since 1965 nonprofit schools, hospitals, and churches have been exempt from the law's reporting requirements.

As the legal overseer of charities that do business in California, the Attorney General works to protect the interest of all public beneficiaries within his jurisdiction. The Attorney General may conduct investigations and bring legal actions to protect the assets of California charities and ensure the assets are used for their intended charitable purposes.

Using CFR Search, you can look up the financial disclosure reports that commercial fundraisers in California must file with the Attorney General's Registry of Charitable Trusts. These financial reports show if a commercial fundraiser is registered with the state, on whose behalf funds are being raised, and how much of the money raised actually reaches the charity.

Publications available on this website include guides for charities, annual summaries of commercial

### NEW ONLINE FILING OPTIONS FOR CHARITIES AND RAFFLE REGISTRANTS

There are new online filing options for both charities and nonprofit organizations that conduct raffles. In addition to filing their IRS Form 990s electronically, charities may now file their Annual Registration Renewal Fee Report (Form RRF-1) and pay their renewal fees online. Organizations conducting raffles may complete their raffle registration renewal online. To use these new filing options, please visit Registry Online Filing.

### ENFORCEMENT ACTIONS

**Forever Light Foundation**

The Attorney General sued the officers and directors of Forever Light Foundation, alleging that they unlawfully transferred a $5.2 million office building in Monterey Park owned by the charity to their own for-profit company, W-Coline Management Company. The complaint_pdf further alleged that the defendants financed almost the entire purchase price with a loan from the charity, that few if any payments were ever made on the loan, and that all of the rental income from the building was kept by the defendants' for-profit company. The named defendants included Oscar Chang, Joan Chang, Joshua Chang, and Wellington Chiang. Pursuant to the settlement agreement the property is to be returned to Forever Light.

### ELECTRONIC FILING OF 990s IS HERE!

Electronic filing is now available to charities submitting IRS Form 990 or IRS Form 990-EZ to the Attorney General's Registry of Charitable Trusts. This electronic filing capability does not yet apply to IRS Form 990-PF. To file electronically with the Registry, charities that use software programs to file their 990s electronically with the IRS need only indicate when completing the filing portion of the program that they also wish to have the 990 filed with the California Registry of Charitable Trusts.



State *of* California Department *of* Justice

Office *of the* Attorney General

Kamala D. Harris

Attorney General

| Home | About the AG | In the News | Careers | Services & Information | Programs A - Z | Contact Us |

**Search the Files of the Registry of Charitable Trusts**

- Welcome to the search page of the Registry of Charitable Trusts (RCT). Here you are able to search for information on charities, charity fundraising professionals, and raffle registrants.

- This search page provides access to information about various types of entities that are registered with the Registry of Charitable Trusts. With a few exceptions, it does not currently provide access to electronic copies of documents filed with the Registry. Electronic copies of filings by certain registrants, such as the annual financial reports filed by commercial fundraisers for charitable purposes, are available elsewhere on the Charities website. Access to these reports is available at CFR search.

- Please enter search criteria below to start your search. Enter data in any field. Remember, the fewer your search criteria, the broader the range of the results that will be obtained by your search. For example, if you search using a name or federal employer identification number (FEIN) and leave the Registration Type or the Record Type fields blank, your results may return multiple registrations for the entity. It may be, for example, that the entity is registered both as a charity and as an organization conducting raffles.

- If you have partial information, you may use a wildcard search by placing an asterisk at the beginning or end of the search terms entered. For example, if you are not sure whether a name is spelled Alan or Allen, enter Al* to search.

- For help using and interpreting the results from the Registry Search, please review Registry Search Feature – Tips for use and definition of the codes.

| | |
|---|---|
| Record Type: | --All-- |
| Registration Type: | --All-- |
| Secretary of State or Franchise Tax Board Number (numbers only): | |
| Organization Name: | INMAN |
| State Charity Registration Number: | |
| DBA: | |
| FEIN (numbers only): | |
| Registration Status: | --All-- |
| County: | |
| City: | |
| State: | --All-- |
| ZIP Code: | |

Search   Clear



State *of* California Department *of* Justice

Kamala D. Harris

Office *of the* Attorney General

Attorney General

| Home | About the AG | In the News | Careers | Services & Information | Programs A - Z | Contact Us |

For more detailed information on an organization's registration, click on the Organization Name from the alphabetical list below. If there are additional pages of the search results, there will be clickable page numbers at the bottom of the list. The maximum number of pages is 25 so if you do not find the organization for which you are searching, click the 'Search Again' button and change the search criteria.

Search Again

| Organization Name | Registration Number | Record Type | Registration Status | City | State | Registration Type | Record Type |
|---|---|---|---|---|---|---|---|
| 1 | | | | | | | |

State *of* California Department *of* Justice



Kamala D. Harris

Office *of the* Attorney General

Attorney General

| Home | About the AG | In the News | Careers | Services & Information | Programs A - Z | Contact Us |
|------|-------------|------------|---------|----------------------|----------------|-------------|

**Search the Files of the Registry of Charitable Trusts**

- Welcome to the search page of the Registry of Charitable Trusts (RCT). Here you are able to search for information on charities, charity fundraising professionals, and raffle registrants.

- This search page provides access to information about various types of entities that are registered with the Registry of Charitable Trusts. With a few exceptions, it does not currently provide access to electronic copies of documents filed with the Registry. Electronic copies of filings by certain registrants, such as the annual financial reports filed by commercial fundraisers for charitable purposes, are available elsewhere on the Charities website. Access to these reports is available at CFR search.

- Please enter search criteria below to start your search. Enter data in any field. Remember, the fewer your search criteria, the broader the range of the results that will be obtained by your search. For example, if you search using a name or federal employer identification number (FEIN) and leave the Registration Type or the Record Type fields blank, your results may return multiple registrations for the entity. It may be, for example, that the entity is registered both as a charity and as an organization conducting raffles.

- If you have partial information, you may use a wildcard search by placing an asterisk at the beginning or end of the search terms entered. For example, if you are not sure whether a name is spelled Alan or Allen, enter Al* to search.

- For help using and interpreting the results from the Registry Search, please review Registry Search Feature – Tips for use and definition of the codes.

|                                                                  |                  |
|------------------------------------------------------------------|------------------|
| Record Type: | --All-- |
| Registration Type: | --All-- |
| Secretary of State or Franchise Tax Board Number (numbers only): |  |
| Organization Name: | INDIEGOGO |
| State Charity Registration Number: |  |
| DBA: |  |
| FEIN (numbers only): |  |
| Registration Status: | --All-- |
| County: |  |
| City: |  |
| State: | --All-- |
| ZIP Code: |  |

Search  Clear



State *of* California Department *of* Justice

Office *of the* Attorney General

Kamala D. Harris

Attorney General

| Home | About the AG | In the News | Careers | Services & Information | Programs A - Z | Contact Us |

For more detailed information on an organization's registration, click on the Organization Name from the alphabetical list below. If there are additional pages of the search results, there will be clickable page numbers at the bottom of the list. The maximum number of pages is 25 so if you do not find the organization for which you are searching, click the 'Search Again' button and change the search criteria.

Search Again

| Organization Name | Registration Number | Record Type | Registration Status | City | State | Registration Type | Record Type |
|---|---|---|---|---|---|---|---|
| 1 | | | | | | | |

# Exhibit E



**Charles Carreon< chascarreon@gmail.com>**

## Indiegogo.com and Matthew Inman / "Bear Love"
1 message

---

**Charles Carreon, Esq.** < chascarreon@gmail.com>                    Thu, Jun 14, 2012 at 5:15 PM
To: david.sampson@cancer.org

Dear Mr. Sampson

This letter follows up on my telephone call yesterday, in which you agreed to be my contact with the
American Cancer Society (ACS), and restates the inquiries I made, as follows:

1.  Is ACS aware of the "Bear Love Good" fundraising campaign being operated at this link on the
    IndieGogo.com website?  http://www.indiegogo.com/bearlovegood
2.  Has ACS authorized the use of its trademark, USPTO Reg. #1615654 in connection with this
    campaign?
3.  Does IndieGogo.com or Mr. Inman have the required written contract with NWF required
    by Cal. Govt. Code Sec. 12599(i)?
4.  Does ACS approve of the solicitation of charitable contributions in conjunction with references to
    bestiality, such as the Bear Love Good campaign is using? (The campaign specifically accuses
    either my mother or that of my client of "seducing a Kodiak bear" and providing a misogynistic
    cartoon to illustrate this activity, and as a result, I have received many hate emails threatening me
    with bear attacks, rape by a bear, and further lewd solicitations concerning my mother, who, thank
    heavens, has been deceased for many years.)

I look forward to your promptest possible response.  Under Cal. Gov. B & P Code Sec. 17510.8, all
amounts raised for charitable purposes by Mr. Inman and IndieGogo.com are subject to a charitable trust.
Currently, Mr. Inman has committed to pay only $10,000 to the ACS.  I believe the ACS is entitled to half of
the money that has been raised, currently $166,169 (see attached screencapture).  Please advise as to
ACS's position on asserting a claim to these funds and what legal action the ACS intends to take in that
regard.

I respectfully request that this inquiry be forwarded to legal counsel for ACS and kept in confidence and not
disclosed to IndieGogo.com or Mr. Inman, in order to protect the rights of the public and ACS.

--
Charles Carreon, Esq.
2165 S. Avenida Planeta
Tucson, AZ 85710
Tel 1: 520-841-0835
Tel 2: 520-762-7314
Fax: 520-843-2083

This message may contain attorney-client and/or attorney work-product privileged material.  If you are not
the intended recipient, please first notify the sender and then delete the message and any attachment.
Inadvertent disclosures shall not work a waiver of any privilege.

---

 **6-14-2012 5-10-26 PM.BearLove.Screencap.pdf**
329K

# Exhibit F



**Charles Carreon< chascarreon@gmail.com>**

## Indiegogo.com and Matthey Inman / "Bear Love" Campaign
1 message

**Charles Carreon, Esq.** < chascarreon@gmail.com>                    Thu, Jun 14, 2012 at 2:37 PM
To: mcintoshb@nwf.org

Dear Ms. McIntosh:

This letter follows up on my voicemail of a few moments ago, and restates the inquiries I made, as follows:

1.  Is the National Wildlife Federation aware of the "Bear Love Good" fundraising campaign being operated at this link on the IndieGoGo.com website? http://www.indiegogo.com/bearlovegood
2. Has the NWF authorized the use of its trademark, USPTO Reg. # 3805508 in connection with this campaign?
3. Does IndieGoGo.com or Mr. Inman have the required written contract with NWF required by Cal. Govt. Code Sec. 12599(i)?
4. Does the NWF approve of the solicitation of charitable contributions in conjunction with references to bestiality, such as the Bear Love Good campaign is using? (The campaign specifically accuses either my mother or that of my client of "seducing a Kodiak bear" and providing a misogynistic cartoon to illustrate this activity, and as a result, I have received many hate emails threatening me with bear attacks, rape by a bear, and further lewd solicitations concerning my mother, who, thank heavens, has been deceased for many years.)

I look forward to your promptest possible response.  Under Cal. Gov. B & P Code Sec. 17510.8, all amounts raised for charitable purposes by Mr. Inman and IndieGogo.com are subject to a charitable trust. Currently, Mr. Inman has committed to pay only $10,000 to the NWF.  I believe the NWF is entitled to half of the money that has been raised, currently $165,269.  Please advise as to the NWF's position on asserting a claim to these funds and what legal action the NWF intends to take in that regard.

I respectfully request that this inquiry be kept in confidence and not disclosed to IndieGogo.com or Mr. Inman, in order to protect the rights of the public and the NWF.

Very truly yours,
Charles Carreon, Esq.
2165 S. Avenida Planeta
Tucson, AZ 85710
Tel 1: 520-841-0835
Tel 2: 520-762-7314
Fax: 520-843-2083

This message may contain attorney-client and/or attorney work-product privileged material.  If you are not the intended recipient, please first notify the sender and then delete the message and any attachment. Inadvertent disclosures shall not work a waiver of any privilege.

# Exhibit G



The Oatmeal

Comics   Quizzes   Blog   Misc   Shop

Follow: Twitter Facebook RSS / Email

Comics: ❓ Random   ★ Most Popular   All   Cats   Grammar   Food   Animals   Tech

# Operation BearLove Good, Cancer Bad has ended. Now what?

Operation BearLove Good, Cancer Bad ended early this morning with total funds raised at $220,024.00 -- almost exactly 11 times the original goal of $20k. IndieGoGo takes 4%, so that puts the **total money going to charity at $211,223.04**.

I've been trying very hard not to post about all the insane drama surrounding Carreon and his better half and instead focusing on the fundraiser. Now that it's ended, I wanted to address some specific questions about how I'm donating the funds.

**When will you pay the charities?**
Carreon has provided notice that he intends to ask the court for a restraining order which will stop the transfer of funds from Indiegogo. If we can't get that silly bullshit dismissed, the money could be held up for days, weeks or months. Assuming I *can*, I should have the money in about a week.

Once the money is moved, I still plan on withdrawing $211k in cash and taking a photo to send to Charles Carreon and FunnyJunk, along with the drawing of Funnyjunk's mother. After the photo is mailed I'll be sending checks to the charities. I'll also post receipts as well as public confirmations from both charities that they received every penny that was promised.

**Is all the money going to the National Wildlife Federation and the American Cancer Society?**
Yes. Previously I stated that because the amount raised was so much larger than expected I was going to divide the money into four charities instead of two, but unfortunately Carreon's lawsuit claims that I'm holding an "illicit fundraiser" and not donating money where I said I would. To avoid further litigation with him, I decided to split the money between the original two charities. If Carreon wanted a minor victory, he got one here.

I'll keep posting updates about the fundraiser here, so check back soon.

-Oats



Random Comic   Most Popular   :D All Comics

fb The Oatmeal on Facebook   👍 Like   625,094

🐦 Tweet  499   +1  295   👍 Like  5.3k   Send

MOAR BLOGNESS

→ Operation BearLove Good, Cancer Bad has ended. Now what?

→ Charles Carreon is officially suing me and and the charities of my fundraiser

→ FunnyJunk is threatening to file a federal lawsuit against me unless I pay $20,000 in damages

→ Top BearFood links for this week

→ This was the Final Jeopardy question last night



Why Nikola Tesla was the greatest geek who ever lived



10 reasons to avoid talking on the Phone



👍 Like 🔖 and 163 others liked this.

👤 DISQUS ▾

## Add New Comment

Login

Type your comment here.

Real-time updating is **paused**. (Resume)

## Showing 20 of 485 comments

Sort by popular now ▾

**nickseam**

So his minor victory cost some other charities some likely much needed money. Way to be a hero, Chuck. Fucking prick.

10 hours ago   424 Likes                    Like   Reply

**Candy Candy**

Hey, he's a lawyer.  In Argentina we call them "vultures". Go figure.

10 hours ago   in reply to nickslam   95 Likes                          Like   Reply

**Ethan Wilson**

That's funny because his last name is Carreon...like Carrion...

10 hours ago   in reply to Candy Candy   196 Likes                     Like   Reply

**Cheryl Hopper**

To liken this guy to a vulture is to insult real vultures.  He's a parasite, and an incredibly stupid one at that.
A successful parasite is one which goes unnoticed by the host long enough to feed and fulfill its role in the
life cycle of the species.  Chuck is a greedy attention whore.

9 hours ago   in reply to Candy Candy   87 Likes                        Like   Reply

**Electrogeek77**

But now you've insulted the parasites!

8 hours ago   in reply to Cheryl Hopper   56 Likes                      Like   Reply

**Minalien**

So basically he's Goa'uld.

7 hours ago   in reply to Cheryl Hopper   33 Likes                      Like   Reply

**Navarr Barnier**, I love tech, and PHP. They really fit together.

Thats insulting to the Goa'uld!

7 hours ago   in reply to Minalien   24 Likes                           Like   Reply

**Marc-Anthony Taylor**

@Michael Calkins you sir, are a wraithist!

3 hours ago   in reply to Navarr Barnier   9 Likes   🚩                    Like

**Thelieisacake**

@Michael Calkins But that's offensive to...ah, forget it.

5 hours ago   in reply to Navarr Barnier   13 Likes   🚩                   Like

**Michael Calkins**

So basically he's a life sucking Wraith.

6 hours ago   in reply to Navarr Barnier   14 Likes   🚩                   Like

**BillG1224**

vultures are close descendants of pterodactyls, therefore the mother fuckin' pterodactyl should go
after this jerk for ruining his name.

5 hours ago   in reply to Cheryl Hopper   19 Likes   🚩                 Like   Reply

**Branz Mann**

Everywhere else we call them vampires.

10 hours ago   in reply to Candy Candy   21 Likes   🚩                  Like   Reply

**Not Now, I'm Calibrating**

No need to insult the vampires.

10 hours ago   in reply to Branz Mann   54 Likes   🚩                  Like   Reply

**Yakostovian**

I think it's hard to insult them any more than Stephanie Meyer already has.

8 hours ago   in reply to Not Now, I'm Calibrating   221 Likes   🚩     Like   Reply





**Googoodoll15**

HAI You, sir/ma'am, just made my day ^.^

7 hours ago     in reply to Yakostovian     11 Likes     🏳     Like

**Samuel Lugo Bueno**

I know them as assholes.

10 hours ago     in reply to Branz Mann     15 Likes     🏳     Like     Reply

**MrE**

Stop insulting arseholes.

He's what is widely known as a "dickhead".

6 hours ago     in reply to Samuel Lugo Bueno     2 Likes     🏳     Like     Reply

**Fantine**

Stop insulting dickheads.
In motherland we call them "douche bags".

4 hours ago     in reply to MrE     2 Likes     🏳     Like

**Diogo Pinto**

That's an insult to all dickheads now :(

4 hours ago     in reply to MrE     2 Likes     🏳     Like

**Marmijar**

My little friend resents that comment. Besides, everyone knows he's discarded douche fluid.

3 hours ago     in reply to MrE     🏳     Like

✉ Subscribe by email   📶 RSS

Load more comments

blog comments powered by DISQUS



Donate **Now!**
888-817-1803

**Help a Local School**
**of Your Choice**
**Get a Tax Deduction Too!**

Cars 4 Causes
"The Charity That Gives to Charities"



Avatar & Aliens are the same goddamn movie.



Horrible Cards for Valentine's Day ♥ ♥



Dear Sriracha Rooster Sauce

What it means when you say *literally*



The Bobcats Episode 5 Friday

The Primary Difference Between Mayonnaise and Miracle Whip

Neato things from The Oatmeal Shop

### I Love Sriracha Magnet



View Item >>

### Special Ops Bunny Shirt



View Item >>

### Bear-O-Dactyl Shirt



View Item >>

### Bacon is Greater Than Love Bumper Sticker



View Item >>

### Bears Love Boomboxes Shirt



View Item >>

### Canadian Pet - Greeting Card



View Item >>

### Wookiee Jesus - Signed Print



View Item >>

### Tesla > Edison Shirt



View Item >>

### Sriracha Flamethrower Grizzly - Signed Print



View Item >>

View more Oatmeal goodies here. >>

Follow the Oatmeal  Twitter  -  Facebook  -  RSS  -  Email

Home  -  Comics  -  Quizzes  -  Blog

The Oatmeal

Misc  -  Shop  -  About  -  Contact

All artwork and content on this site is Copyright © 2012 Matthew Inman. Please don't steal.

TheOatmeal.com was lovingly built using CakePHP

# Exhibit H



## Indiegogo Help Center

| Home | Forums | Submit a request | Check your existing requests | | English |

Forums / Creating a Campaign / Payments

### PayPal Set-Up for Nonprofits

GogoKate
posted this on December 02, 2011 14:56

501c-3 Non Profit organizations must be properly registered as a Nonprofit in PayPal in order to have contributions eligible for tax deductible status. Non Profits also receive a discount on payment processing fees. PayPal requires the following documents to verify your status:

- Evidence of Tax-Exempt status (i.e. 501c3 form)
- Banks Statement or voided check in the organization's name
- Description of the organization and type of payments it will accept

**How to Set up Nonprofit Status**

1. Log in to your PayPal account
2. Click My Business Setup on the right. Please note that all non profit organizations must be open business accounts.

**Notifications**

> Confirm email address

> Confirm my debit or credit card

> Policy Updates

**My account tools**

> My Business Setup

> PayPal Mobile

(?) Questions? We're here to help.
Contact us

3. Click on the Get Money button

**Managing my business**

Manage my money

Link your bank account, lift the initial limits set on your PayPal account, and much more.        Get Money

4. Scroll down to the section that says, "Send us some documents"
5. Click on the blue link that says, "here"

**Send us some documents**

If you contacted us earlier, you may have received communication via phone or email from us requesting some documents.

**Upload or Fax documents**

Upload your scanned documents here. We accept GIF, JPG, PNG, and PDF file formats.)

6. This is the page where you can Browse for your documents that you scanned into your computer. Click Upload File for each document that you upload.
7. When done uploading documents, make sure to click Send Files at the bottom to complete the process. PayPal will receive the documents instantly.

**Step 1: Find and upload files**

Select File   Upload a GIF, JPG, PNG, or PDF file



One person found this useful. - **Me too!**

**Add a comment**

© 2012 Indiegogo Inc.
All Rights Reserved

Terms
Privacy Policy
Distribution

Contact Us

**Learn More**
Why Indiegogo?
Features
Pricing
FAQ

Help

**Customer Happiness**
Campaigner
Contributor

**About Us**
Press

**Visit our blog**

# Exhibit I



| | |
|---|---|
| | Charles Carreon, Attorney at Law |
| | 2165 S. Avenida Planeta |
| | Tucson, Arizona 85710 |
| | chas@charlescarreon.com |
| | Telephone:    520-841-0835 |
| | Fax:              520-843-2083 |

June 26, 2012

Email:  copyright@indiegogo.com

Via Fax: 866-641-4646
Attn: Danae Ringelmann
Company: Indiegogo, Inc.
Address: 301 8th Street, Suite 225
San Francisco, CA 94103

Re:      Settlement Proposal / Carreon v. Inman, Case No. CV 12-03112 EMC

Dear Ms. Ringelmann:

This follows up on a voicemail to you at 12:39 and 12:49 p.m. today, which was
however truncated twice by the Indiegogo system, so you may not hear all I
attempted to say on those voicemails.  My purpose was to provide you with this
notice.

Notice is hereby provided that pursuant to Local Rule 65-1 and F.R.Civ.P. 65,
Plaintiff will move the Court for a Temporary Restraining Order andOrder to
Show Cause Regarding Preliminary Injunction to enjoin defendant
Indiegogo,Inc. pending trial of this action from transferringthe proceeds of the
Bear Love campaign in the amount of not less than $220,014 (the"Charitable
Fund"), or any amount at all, to Matthew Inman, andrequiring that the
Charitable Fund be held as segregated funds by Indiegogopending further of the
Court for distribution of the Charitable Fund to the designated beneficiaries
ofthe Bear Love campaign, to wit, defendants, the American Cancer Society and
theNational Wildlife Federation.

If Indiegogo is willing to stipulate to this proposed Temporary Restraining
Order, either before or after Plaintiff files his application, please advise, and I will
draft a proposed stipulation to effectuate any agreement we can reach.

Please forward this notice to your legal counsel, so that I can arrange to email,
fax, or by some other expeditious means deliver the ex parte papers to Indiegogo

and its counsel.  Please feel free to have your attorney contact me directly at 520-841-0835.

Thank you for your attention to this matter.

Very truly yours,



Charles Carreon

cc:      Dep. Attorney General Joseph Zimring at fax 213-897-7605
         Joseph.Zimring@doj.ca.gov



Charles Carreon< chascarreon@gmail.com>

## Successful transmission to 12138977605. Re: Carreon v. Inman / Notice of Ex Parte TRO

1 message

**send@mail.efax.com**< send@mail.efax.com>                    Tue, Jun 26, 2012 at 1:13 PM
To: chas@charlescarreon.com



Dear Charles Carreon,

**Re: Carreon v. Inman / Notice of Ex Parte TRO**

The 3 page fax you sent through eFax.com to 12138977605 was successfully transmitted at 2012-06-26 20:13:00 (GMT).

The length of transmission was 94 seconds.

The receiving machine's fax ID: 2138977605.

Best Regards,

If you need additional assistance, please visit our online help center at http://www.efax.com/help/. Thank you for using the eFax service.

eFax.com

---

**Customer Service**
Online Help: http://www.efax.com/help/
Tel: 323-817-3205 (US) or 0870 711 2211 (UK)
Email: help@mail.efax.com

---



Charles Carreon, Attorney at Law
2165 S. Avenida Planeta
Tucson, Arizona 85710
chas@charlescarreon.com
Telephone:    520-841-0835
Fax:              520-843-2083

June 26, 2012

Via Fax: 404-417-5808
Laurisa Curran, Senior Counsel
American Cancer Society, Inc.
250 Williams Street NW
Atlanta, GA30303

Re:    Carreon v. Inman, Case No. CV 12-03112 EMC

Dear Ms. Curran:

This letter follows up on an email that Mr. David Sampson, the American Cancer
Society's west coast media head asked me to forward to you.

 Notice is hereby provided to the National Wildlife Federation and the American
Cancer Society, that pursuant to Local Rule 65-1 and F.R.Civ.P. 65,Plaintiff will
move the Court for a Temporary Restraining Order and Order toShow Cause
Regarding Preliminary Injunction (TRO) to enjoin defendant
Indiegogo,Inc.pending trial of this action from transferringthe proceeds of the
Bear Love campaign in the amount of not less than $220,014 (the"Charitable
Fund"), or any amount at all, to Matthew Inman, and requiring that the
Charitable Fund be heldas segregated funds by Indiegogo pending further of the
Court for distribution of the Charitable Fund to the designated beneficiaries of
the Bear Love campaign, to wit, defendants, the American Cancer Society (ACS)
and the National Wildlife Federation (NWF).

The proposed TRO will not seek the imposition of any relief adverse to the ACS,
and is being filed solely to secure moneys in the Bear Love campaign for the
benefit of ACS and NWF as the identified beneficiaries of the Bear Love
campaign.  Accordingly, please advise at your earliest possible opportunity if I
may inform the Court of the ACS's position on the TRO.

ACS was served with the Summons and Complaint on at the offices of its Agent
for Service of Process in Los Angeles, California shortly after the action was
commenced.  Since that date, there have been two filing developments.  The case
was reassigned to the Hon. Edward M. Chen, and Plaintiff filed a First Amended

Complaint.  These documents were attached to my prior email, and are not resent via fax in order avoid a waste of fax paper (the First Amdended Complaint is quite lengthy).

Pease feel free to contact me directly at 520-841-0835.

 I left a voicemail for at the number Mr. Sampson provided for your Atlanta office, 404.329.5762, and another for Sharonda Rich at 404-417-5968.

Thank you for your attention to this matter.

Very truly yours,



Charles Carreon

cc:      Dep. Attorney General Joseph Zimring at fax 213-897-7605
         Joseph.Zimring@doj.ca.gov



**Charles Carreon< chascarreon@gmail.com>**

---

## Successful transmission to 14044175808. Re: Carreon v. Inman, Case No. CV 12-03112 EMC

1 message

---

**send@mail.efax.com**< send@mail.efax.com>          Tue, Jun 26, 2012 at 3:07 PM
To: chas@charlescarreon.com





Dear Charles Carreon,

**Re: Carreon v. Inman, Case No. CV 12-03112 EMC**

The 3 page fax you sent through eFax.com to 14044175808 was successfully transmitted at 2012-06-26 22:07:33 (GMT).

The length of transmission was 95 seconds.

The receiving machine's fax ID: 404 417 8013.

Best Regards,

If you need additional assistance, please visit our online help center at http://www.efax.com/help/. Thank you for using the eFax service.

eFax.com

---

**Customer Service**
Online Help: http://www.efax.com/help/
Tel: 323-817-3205 (US) or 0870 711 2211 (UK)
Email: help@mail.efax.com

---



**Charles Carreon< chascarreon@gmail.com>**

# Successful transmission to 12138977605. Re: Carreon v. Inman, Case No. CV 12-03112 EMC

1 message

---

**send@mail.efax.com**< send@mail.efax.com>                    Tue, Jun 26, 2012 at 3:07 PM
To: chas@charlescarreon.com



Dear Charles Carreon,

**Re: Carreon v. Inman, Case No. CV 12-03112 EMC**

The 3 page fax you sent through eFax.com to 12138977605 was successfully transmitted at 2012-06-26 22:07:33 (GMT).

The length of transmission was 95 seconds.

The receiving machine's fax ID: 2138977605.

Best Regards,

If you need additional assistance, please visit our online help center at http://www.efax.com/help/. Thank you for using the eFax service.

eFax.com

---

**Customer Service**
Online Help: http://www.efax.com/help/
Tel: 323-817-3205 (US) or 0870 711 2211 (UK)
Email: help@mail.efax.com

---



**Charles Carreon< chascarreon@gmail.com>**

## Successful transmission to 12138977605. Re: Carreon v. Inman / Letter to Indiegogo Lawyers

1 message

**send@mail.efax.com**< send@mail.efax.com>                                Tue, Jun 26, 2012 at 5:26 PM
To: chas@charlescarreon.com



Dear Charles Carreon,

**Re: Carreon v. Inman / Letter to Indiegogo Lawyers**

The 4 page fax you sent through eFax.com to 12138977605 was
successfully transmitted at 2012-06-27 00:26:41 (GMT).

The length of transmission was 129 seconds.

The receiving machine's fax ID: 2138977605.

Best Regards,

If you need additional assistance, please visit our online help
center at http://www.efax.com/help/. Thank you for using the
eFax service.

eFax.com

---

**Customer Service**
Online Help: http://www.efax.com/help/
Tel: 323-817-3205 (US) or 0870 711 2211 (UK)
Email: help@mail.efax.com

---

# Exhibit J



Charles Carreon, Attorney at Law
2165 S. Avenida Planeta
Tucson, Arizona 85710
chas@charlescarreon.com
Telephone:     520-841-0835
Fax:              520-843-2083

June 26, 2012

Via Email:     rtangri@durietangri.com
                   mlemley@durietangri.com
                   enovikov@durietangri.com

Ragesh Tangri
Mark Lemley
Eugene Novikov
Durie Tangri
217 Leidesdorff Street
San Francisco, CA 94111

Re:     Carreon v. Inman and Indiego, Case No. CV 12-03112 EMC

Dear Counsel:

This letter follows up on our conversation today in which you all were present on the speakerphone.  Thank you for the opportunity to present a proposal for a stipulated resolution of the pending matter.

**First,** this will provide written notice that pursuant to Local Rule 65-1 and F.R.Civ.P. 65, Plaintiff will move the Court in the above-named and numbered action for a Temporary Restraining Order and Order to Show Cause Regarding Preliminary Injunction (TRO) to enjoin defendant Indiegogo,Inc. ("Indiegogo") pending trial of this action from transferring the proceeds of the Bear Love campaign in the amount of not less than $220,014 (the"Charitable Fund"), or any amount at all, to Matthew Inman, and requiring that the Charitable Fund be held as segregated funds by Indiegogo pending further order of the Court, for distribution of the Charitable Fund to the designated beneficiaries of the Bear Love campaign, to wit, defendants, the American Cancer Society (ACS) and the National Wildlife Federation (NWF).

The proposed TRO will not seek the imposition of any relief adverse to Indiegogo, ACS, or NWF, and is being filed solely to secure moneys in the Bear Love campaign for the benefit of ACS and NWF as the identified beneficiaries of the Bear Love campaign.

Indiegogo was served with the Summons and Complaint on at the offices of its Agent for Service of Process in Los Angeles, California shortly after the action was commenced. Since that date, there have been two filing developments. The case was reassigned to the Hon. Edward M. Chen, and Plaintiff filed a First Amended Complaint ("FAC"). These documents are transmitted herewith.

**Second,** as I proposed in our telephone conversation, Plaintiff is willing to resolve this entire matter by stipulation that will accomplish the stated purposes of the Bear Love campaign as defined by Mr. Inman, except as follows:
- No portion of the Charitable Fund shall be disbursed to Mr. Inman.
- The entire Charitable Fund will be disbursed 50/50 to ACS and NWF.

**Third,** I am attempting to work with ACS and NWF to assure that all of the 14,406 Bear Love campaign donors will receive receipts for their tax-deductible donations, which they of course would not receive if the money were disbursed to Mr. Inman. As I explained, based upon my non-specialist knowledge of tax law, if Mr. Inman were to receive the Charitable Fund and donate the funds to ACS and NWF, Mr. Inman, rather than the Bear Love campaign donors, would receive the tax deduction, a form of unjust enrichment that would inure to his benefit and to their detriment.

**Fourth,** if the matter can be resolved by stipulation, Plaintiff will waive: (a) his argument that Indiegogo is not entitled to receive the $8,800.56, *i.e.,* four percent (4%) of the Charitable Fund because it is not a registered charitable fundraiser, as alleged in ¶ 60 of the FAC; (b) his prayer for relief seeking an injunction to restrain Indiegogo to "halt all ongoing campaigns on the Indiegogo site currently operating in violation of California law and hold all funds in charitable trust until Indiegogo registers with the California Attorney General as a charitable fundraiser and in all other ways complies with California law regulating charitable fundraising;" and, (c) his claim for an attorney's fee as a public attorney general.

As agreed, as soon as the Ex Parte Application is filed, I will email it to all three of you. I look forward to discussing this matter further in an effort to draft a stipulation that will resolve this matter without a need to invoke an adjudicatory process. Please contact me directly at 520-841-0835.

Thank you for your attention to this matter.

Very truly yours,

Charles Carreon

Charles Carreon, Esq.                                    Page 3                                    6/26/2012

cc:     Dep. Attorney General Joseph Zimring at fax 213-897-7605
        Joseph.Zimring@doj.ca.gov

# Exhibit K

[Quoted text hidden]

--
Charles Carreon, Esq.

---

**Grilli, Sarah** <SGrilli@kilpatricktownsend.com>                                                    Thu, Jun 28, 2012 at 2:48 PM
To: "Charles Carreon, Esq." <chascarreon@gmail.com>
Cc: "Grossman, Richard" <rgrossman@kilpatricktownsend.com>

Dear Charles:

Yes, our office can accept service on behalf of the American Cancer Society.

Actually, I haven't spoken with the National Wildlife Fund's attorney but I did forward your request to my client who will try to reach out to them.

We look forward to receiving a copy of your motion.

Regards,

**Sarah T. Grilli**
**Kilpatrick Townsend & Stockton LLP**
Eighth Floor | Two Embarcadero Center | San Francisco, CA  94111
office 415 273 7542  | fax 415 294 9128
sgrilli@kilpatricktownsend.com | My Profile | vCard

**From:** Charles Carreon, Esq. [mailto:chascarreon@gmail.com]
**Sent:** Thursday, June 28, 2012 11:30 AM